751 A.2d 524

ROBERT B. CREWS, JR., PLAINTIFF-RESPONDENT, v.
BARBARA D. CREWS, DEFENDANT-APPELLANT.

Argued February 1, 2000—Decided May 31, 2000.

14

*Dale Elizabeth Console,* argued the cause for appellant (*Ulrichsen, Amarel & Eory,* attorneys).

*Francis W. Donahue,* argued the cause for respondent (*Donahue, Braun, Hagan, Klein & Newsome,* attorneys).

The opinion of the Court was delivered by

LaVECCHIA, J.

Defendant, Barbara Crews, seeks review of the denial of her motion for modification of a rehabilitative alimony award. Her motion sought to reinstate and increase alimony from $800 to $3500 per month, and to convert the increased amount to permanent alimony. In this appeal, she seeks reexamination of the concept of "changed circumstances" justifying a modification to an alimony award.

Two decades ago in *Lepis v. Lepis,* 83 *N.J.* 139, 416 *A.*2d 45 (1980), we reviewed the standards and procedures for modifying support and maintenance awards after a final judgment of divorce. The *Lepis* standards and procedures have stood the test of time well. In this matter, we reaffirm the *Lepis* principle that the goal of a proper alimony award is to assist the supported spouse in achieving a lifestyle that is reasonably comparable to the one enjoyed while living with the supporting spouse during the marriage. The importance of establishing the standard of living experienced during the marriage cannot be overstated. It serves as the touchstone for the initial alimony award and for adjudicating later motions for modification of the alimony award when "changed circumstances" are asserted.

This case illustrates the pitfalls associated with the failure to establish the marital standard of living. The initial divorce decree failed to set forth the standard of living established during the Crewses' marriage. Without this information, defendant's

motion for modification could not be properly analyzed. And, naturally, that same flaw permeates the initial alimony decision. Thus, we have no assurance that either the initial alimony award or the subsequent motion to modify alimony was judged in accordance with the proper standard. That standard is: whether the supported spouse can maintain a lifestyle that is reasonably comparable to the standard of living enjoyed during the marriage. If the supported spouse cannot, and if the supporting spouse's financial condition permits, a modification to the support award is appropriate and warranted.

Typically, we would not at this late date revisit an issue that should have been resolved initially at trial or on appeal. However, basic fairness requires that we act to remedy a lack of essential fact-finding in order to be assured that Mrs. Crews' motion for modification of her alimony award is evaluated properly now.

I.

Plaintiff, Robert Crews, and defendant were married in 1977 and separated in 1991. A final judgment of divorce was entered on June 6, 1994. Two children were born of this marriage, both of whom resided with defendant after the divorce.

The Crewses' divorce trial was listed for April 11, 1994. Twelve adjournments were granted prior to that date. Issues relating to plaintiff's income and the value of his closely held corporation were hotly disputed throughout discovery. On April 11, Mrs. Crews' attorney requested a thirteenth adjournment. In part, that request was a result of the court's denial of defendant's motion for *pendente lite* counsel fees, which defendant asserts contributed to the delay in completing discovery. The trial court denied the adjournment request and ordered the case to proceed.

The trial began the next day. Mrs. Crews' attorney informed the court that he and his client would not participate in the proceedings. After the lunch break, Mrs. Crews and her attorney left the courtroom and the proceedings continued on a default

basis. On April 29, 1994, the trial court issued a written opinion outlining the monetary obligations of each party.

Issues relating to equitable distribution were detailed in the divorce judgment. They reflect the degree of dispute over the value of plaintiff's business. Defendant received in value $513,000 of non-business assets under equitable distribution, the bulk of which was the marital home, valued at $415,000. She also received $91,490 as her share of business assets, which plaintiff was required to pay to defendant over a six-year period with interest at 8% per annum. Although expert reports prepared by defendant's experts were admitted into evidence, it appears that the court relied primarily on the testimony of Mr. Crews, as well as Mr. Crews' expert's report and the report of the court-appointed expert, in reaching its conclusions.

Concerning alimony, the court's award was contained in a single paragraph:

Commencing May 1, 1994, [the plaintiff] shall pay to the [defendant] the sum of $800.00 per month as alimony for a period of three (3) years.

The trial court opinion constitutes the sole source for ascertaining the court's reasoning for the alimony award. The court noted that factual findings relevant to the alimony analysis were derived from the testimony of Mr. Crews, as well as from two experts who reached conclusions concerning the cashflow evaluations of Mr. Crews' business. The court then stated in a conclusory fashion that Mr. Crews was in a "superior earning position" because the earnings available for support "may approach $150,000 to $175,000 per year."

Mrs. Crews' financial position also was examined in tailoring the alimony award. The court found that Mrs. Crews could earn approximately $18,000 per year from her job at a clothing store, so long as she went from working part-time to full-time at the job, which then paid $8.50 per hour, because "there is no reason proffered by [Mrs. Crews] not to contribute toward her own support and make some contribution toward raising her children." The court found that if Mrs. Crews worked full-time and earned

$18,000 per year, and in addition received child support and alimony that totaled $27,600, she could meet her expenses. The court also expressed the belief that Mrs. Crews could increase her earnings to approximately $26,000 per year, rather than the $18,000 per year imputed to her at the time of the divorce.

Neither the opinion nor the final divorce judgment contains an analysis of the Crewses' marital standard of living. The absence of that fact-finding is unexplained. However, we note that the record shows relevant information was available. At the time of trial of the divorce action, defendant's Case Information Statement (CIS) contained two columns of financial information regarding monthly expenses. One column contained a breakdown of expenses for defendant and the parties' two children. A second column contained the monthly expenses incurred to support the parties' standard of living during the marriage. Many of the items asserted as representative of the marital lifestyle were suggestive of a lavish standard of living. The detailed expenses included a vacation home on Martha's Vineyard, ownership of a sailboat, membership in a yacht club, multiple vacations per year, and several hundred dollars in entertainment and dining expenses per month. Mrs. Crews contended that these marital expenses were paid for by her husband's business, Benjamin Books Inc. From our review of the opinion of the trial court, as well as the accompanying divorce judgment, it appears that the expenses in this second column were ignored. Instead, in awarding alimony and child support, the court focused exclusively on the monthly expenses for defendant and the two children.

Defendant promptly filed a post-judgment motion, seeking reconsideration of the child-support award, the alimony award, and the equitable-distribution award, as well as a stay of the child-support and alimony awards pending appeal. The trial court denied the motions in their entirety. Review of the *pendente lite* order reveals that Mrs. Crews received considerably more support under the temporary consent order than under the divorce decree. Under the temporary consent order, defendant received $1,600

every other week, plus additional expenses. In contrast, under the divorce judgment Mrs. Crews was awarded a flat $800.00 per month.

Defendant appealed, objecting to the terms of the divorce judgment. In addition, she argued that the trial court should not have vacated and modified an award of attorney's fees for defendant's representation.[1]

The Appellate Division concluded that the "[t]rial court did not abuse [its] discretion in refusing to adjourn the trial for a thirteenth time, in refusing to order the immediate payment of previously ordered attorneys' fees [ ], or in conducting the trial without the participation of Mrs. Crews and her attorney." In affirming the alimony award, the Appellate Division found that

> [t]he trial judge appropriately considered the statutory factors, *N.J.S.A.* 2A:34-23(b), and established an alimony award *consistent with Mrs. Crews' needs* as reflected on her case information statement. This decision is, of course, without prejudice to Mrs. Crews' right to seek an increase in alimony based on changed circumstances, *Lepis v. Lepis*, 83 *N.J.* 139, 416 *A.2d* 45 (1980), or the discovery of concealed assets. *Von Pein v. Von Pein*, 268 *N.J.Super.* 7, 632 *A.2d* 830 (App.Div. 1993) (emphasis added).

In contrast to its review of the alimony award, the Appellate Division held that the trial court's findings were deficient concerning the child-support award, noting that necessary fact-finding and conclusions required by *Rule* 1:7–4 were not provided. The matter was remanded to the trial court for the required findings, in accord with *Curtis v. Finneran*, 83 *N.J.* 563, 570, 417 *A.2d* 15 (1980).[2]

---

[1] Under the *pendente lite* fee award, defendant's attorney was to receive $10,000 in attorney's fees. Reconsideration of this initial order resulted in defendant receiving an additional $35,000 for attorney's fees. The trial court vacated that modification, reducing the additional amount to $10,000. In the end, defendant was awarded $20,000 in counsel fees.

[2] On remand, the trial court issued a letter opinion on October 2, 1994, declining to alter the $1,500 per month child-support provision. Defendant again appealed, and on June 18, 1996, the Appellate Division again remanded the matter to the trial court for additional findings.

Review of the divorce judgment and opinion indicates that the alimony and child-support awards were handled in a similar manner by the trial court. Both were resolved in conclusory fashion. The Appellate Division found deficiencies in the child-support award because the trial court's ruling lacked sufficient factual findings. Similar deficiencies in the alimony award were not addressed by the reviewing court.

During the years following the divorce, defendant worked on a regular basis, but she never was able to earn the $26,000 per year that the trial court assumed she would. Defendant maintains that from 1994 through 1996 she worked 40 hours a week for part-time pay at a retail clothing store located close to defendant's residence. From March 1996 to September 1996, she worked full-time as a manager of a coffee shop. She was then unemployed for several months. In June 1997, she obtained a trainee position, studying and attending a course to become a financial advisor with Smith Barney in the hope of achieving a position that would pay $35,000 per year. However, she could not pass the required exam despite taking it twice. Defendant then returned to her retail position part-time and also worked part-time as a non-certified substitute teacher.

Defendant maintains that the needs of her eldest child hindered her attempts to obtain full-time employment. The child began to suffer from serious depression in 1992 following the Crewses' separation. She required ongoing care for her illness from 1992 through 1996, including a period of hospitalization lasting for

---

On the second remand of this matter, a letter opinion setting support at $2,100 per month was issued on January 9, 1997. Both parties moved for reconsideration and an order was issued for $1,859.70 per month for child support.

Defendant filed another application with the court on July 23, 1997, resulting in an order, dated December 1, 1997, that required plaintiff to pay all college expenses, to comply with the various provisions of the judgment regarding unreimbursed medical expenses, and ordering that child support be increased to $805 per week for the two children. The court reasoned that plaintiff, with his improved financial condition, could now afford those expenses and his children should benefit accordingly.

several months during 1996. Defendant maintains in her certifications that her daughter's illness required "constant attention to keep her depression from spiraling downward."

Rehabilitative alimony ended in April 1997. Defendant filed a motion to modify the terms of the final judgment of divorce in February 1998. She sought to reinstate and increase her alimony award, and to convert it from rehabilitative to permanent alimony.

Defendant presented proof that she had incurred a significant amount of debt since the divorce. She claimed that she had spent all of her alimony, child-support, and equitable-distribution payments, and that she had encumbered the marital residence with an equity loan, cashed in an IRA, sold assets and borrowed heavily, all so that she could attempt to maintain a standard of living similar to that which she and her children had enjoyed while the Crewses were married.

In support of her motion, defendant also asserted that the financial condition of Mr. Crews had improved. That claim was supported by tax returns and CIS forms Mr. Crews had filed in connection with previous applications to the court concerning medical and schooling costs for the children. Mrs. Crews points out that based on this information, in December 1997 the motion Court had concluded that Mr. Crews was earning in excess of $400,000 without any examination of Mr. Crews' business tax returns for any personal expenses paid by his companies.

Defendant also contended that the alimony she received pursuant to the divorce decree was inadequate. She asserted that the award did not allow her to obtain a decent-paying job that would enable her to support herself in a lifestyle similar to the one enjoyed during the marriage. Defendant also claimed that because she had to attend to her children's special health needs, she could obtain only employment that allowed her to have scheduling flexibility. Accordingly, her earning ability was suppressed because of her child-rearing responsibilities.

The motion court denied defendant's request on the grounds that Mrs. Crews "has chosen [sic] to only work part-time, currently making $12 per hour." The court reasoned that plaintiff's improved financial condition would be considered only in the limited context of considering an award increasing support for the children. But the court held that defendant could not "re-appeal" whether she was entitled to permanent alimony because the earlier Appellate Division judgment upheld the alimony provisions of the initial divorce decree. On appeal from that ruling, the Appellate Division affirmed.

The Appellate Division first noted that it would not disturb the original affirmance of the alimony award by the earlier Appellate Division panel. The Appellate Division reiterated that that earlier decision held that the appropriate statutory factors, set forth in *N.J.S.A.* 2A:34–23(b), had been considered when the court set the alimony award. Also, the Appellate Division held that Mrs. Crews should not be permitted to relitigate the award of rehabilitative alimony, reasoning that "[t]he divorcing judge believed that with reasonable efforts within a three year period, Mrs. Crews could achieve self-sufficiency." Although the law permits the modification of an alimony award "upon the nonoccurrence of circumstances that the court found would occur at the time of the rehabilitative award," *see N.J.S.A.* 2A:34–23(b), the Appellate Division held that that clause was inapplicable to the facts of this case.

The Appellate Division also reasoned that the improved financial condition of plaintiff could not justify "allowing a litigant to re-open her Divorce Judgment" in a motion for modification. Relying on the language of this Court in *Lepis,* that "[a]n increase in support becomes necessary whenever changed circumstances substantially impair the dependent spouse's ability to maintain the standard of living reflected in the *original decree or agreement,*" *Lepis, supra,* 83 *N.J.* at 152–53, 416 *A.2d* 45, the panel concluded that Mrs. Crews did not establish that she could not live as expected by the original divorce decree. *Id.* (emphasis added).

Finally, the panel concluded that Mrs. Crews had not been sufficiently diligent in securing employment, agreeing with the motion court's assessment that Mrs. Crews had voluntarily elected to work only part-time.

We granted certification, 162 *N.J.* 132, 741 *A.*2d 99 (1999).

## II.

 Courts have the equitable power to establish alimony and support orders in connection with a pending matrimonial action, or after a judgment of divorce or maintenance, and to revise such orders as circumstances may require. *Lepis, supra,* 83 *N.J.* at 145, 416 *A.*2d 45.

> As a result of this judicial authority, alimony and support orders define only the present obligations of the former spouses. Those duties are always subject to review and modification on a showing of "changed circumstances."
>
> [*Lepis, supra,* 83 *N.J.* at 146, 416 *A.*2d 45 (citations omitted).]

In *Lepis*, the Court sought to achieve an "accommodation" between a court's duty to consider requests for adjustment to spousal support orders and the "desirable features of stable arrangements and spousal cooperation." *Id.* at 150, 416 *A.*2d 45. The Court concluded that an appropriate accommodation was most likely achieved by "an approach linking the notion of 'changed circumstances' to the initial support determination, be it judicial or consensual." *Ibid.*

Focusing on the initial support determination, the Court reiterated holdings, decades old in New Jersey, that tie the supporting spouse's support obligation to

> the quality of economic life during the marriage, not bare survival. The needs of the dependent spouse and children contemplate their continued maintenance at the standard of living they had become accustomed to prior to the separation.
>
> [*Ibid.* (citations omitted).]

A three-part examination was articulated in *Lepis:*

> When support of an economically dependent spouse is at issue, the general considerations are the dependent spouse's needs, that spouse's ability to contribute to the fulfillment of those needs, and the supporting spouse's ability to maintain the dependent spouse at the former standard.
>
> [*Id.* at 152, 416 *A.*2d 45.]

Identifying the marital standard of living at the time of the original divorce decree, regardless of whether a maintenance order is entered by the court or a consensual agreement is reached, becomes critical, then, to any subsequent assessment of changed circumstances when an adjustment to alimony is sought.

It is clear from *Lepis* and its progeny that motion courts have found that the marital standard of living is an essential component in the changed-circumstances analysis when reviewing an application for modification of alimony. *Id.* 83 *N.J.* at 152–53, 416 *A.*2d 45; *see also Innes v. Innes*, 117 *N.J.* 496, 504, 569 *A.*2d 770 (1990) (suggesting that when motion court reviews alimony award, reference to a number of factors assists in determination of whether former marital standard of living is being maintained); *Carter v. Carter*, 318 *N.J.Super.* 34, 43, 722 *A.*2d 977 (App.Div.1999) (finding that motion court is at disadvantage when reviewing modification motion because trial court failed to "relate [the supporting spouse's] rehabilitative alimony obligation to the standard of living of the parties or, more particularly, [the dependent spouse's] standard of living during the marriage"); *Guglielmo v. Guglielmo*, 253 *N.J.Super.* 531, 542–44, 602 *A.*2d 741 (App.Div.1992) (finding that supporting spouse has not fulfilled his continuing obligation to support dependent spouse at former standard of living).

The marital standard of living is essential to an analysis of changed circumstances regardless of whether the original support award was entered as part of a consensual agreement or of a contested divorce judgment. See *Lepis, supra*, 83 *N.J.* at 148, 416 *A.*2d 45 (holding that "[c]onsensual agreements and judicial decrees should be subject to the same standard of 'changed circumstances.' "). In all divorce proceedings, trial courts must "consider and make specific findings" under *N.J.S.A.* 2A:34–23(b) when awarding alimony pursuant to a divorce decree. *Carter, supra*, 318 *N.J.Super.* at 42–43, 722 *A.*2d 977 (finding that *N.J.S.A.* 2A:34–23(b) is mandate that directs Family Part to "adhere to the

statutory requirement in every case, whether contested or uncontested," including those that result in settlement, when fashioning order for alimony); *Boardman v. Boardman,* 314 *N.J.Super.* 340, 345, 714 *A.*2d 981 (App.Div.1998) (concluding that remand to review alimony award was necessary because trial court did not take into account parties' standard of living, as well as other controlling legal principles, when tailoring alimony award); *Heinl v. Heinl,* 287 *N.J.Super.* 337, 346, 671 *A.*2d 147 (App.Div.1996) (finding remand to be necessary because trial court's reasoning in awarding permanent alimony was "very generalized").

An alimony award that lacks consideration of the factors set forth in *N.J.S.A.* 2A:34–23(b) is inadequate, and one finding that must be made is the standard of living established in the marriage. *N.J.S.A.* 2A:34–23(b)(4). The court should state whether the support authorized will enable each party to live a lifestyle "reasonably comparable" to the marital standard of living. *Ibid.*

■ In contested divorce actions, once a finding is made concerning the standard of living enjoyed by the parties during the marriage, the court should review the adequacy and reasonableness of the support award against this finding. That must be done even in situations of reduced circumstances, when the one spouse's income, or both spouses' incomes in combination, do not permit the divorcing couple to live in separate households in a lifestyle reasonably comparable to the one they enjoyed while living together during the marriage.

■ The setting of the marital standard of living is equally important in an uncontested divorce. Accordingly, lest there be an insufficient record for the settlement, the court should require the parties to place on the record the basis for the alimony award including, in pertinent part, establishment of the marital standard of living, before the court accepts the divorce agreement. In this regard we note that *Rule* 5:5–2 already requires in divorce actions the filing of a CIS with detailed financial information, and that subsection (c) places a continuing duty on the parties to update the information provided to the court no later than twenty days prior

to the final hearing. However, the CIS information generally reflects a more current financial picture of the parties. It does not necessarily provide information reflective of the standard of living enjoyed during the marriage. Therefore, that information is not a substitute for the parties' stipulation on the marital standard of living.

Finally, we note that in either a contested or uncontested divorce setting, the earnings of the supporting spouse at the time of entry of the divorce do not limit the standard of living enjoyed by the parties during the marriage. Indeed, in establishing the marital standard of living, a supporting spouse's current earnings are not determinative. *Hughes v. Hughes*, 311 *N.J.Super.* 15, 35, 709 *A.*2d 261 (App.Div.1998). The supporting spouse's current earnings become relevant when determining whether, and the degree to which, the supporting spouse can support the dependent spouse in maintaining a lifestyle reasonably comparable to the standard of living enjoyed by the parties during the marriage. *Ibid.* And although the supporting spouse's current income is the primary source considered in setting the amount of the support award, his or her property, capital assets, and "capacity to earn the support awarded by diligent attention to his [or her] business" are all proper elements for consideration. *Innes, supra,* 117 *N.J.* at 503, 569 *A.*2d 770 (citing *Bonanno v. Bonanno,* 4 *N.J.* 268, 275, 72 *A.*2d 318 (1950)). Similarly, the supported spouse's ability to contribute to his or her own support must be made express in the record when the court enters or approves a support award. *N.J.S.A.* 2A:34–23(b)(1), (5) to (10).

### III.

Having reviewed the findings that must be in the record on a trial court's approval or entry of a spousal support award, we turn now to the vexing issue of motions to modify support awards. Motion courts have rightfully taken a hard look at applications to modify previously-entered support awards out of concern for promoting the fairness and finality of the bargained-for agreement

or the awards for support entered by the trial court. We believe that approach to be correct.

In *Lepis* we sought a fair balancing of interests in our approach to modification applications. We held that alimony and support orders define only the *present obligations* of the former spouses, thereby acknowledging that "[t]hose duties are always subject to review and modification on a showing of 'changed circumstances.'" *Lepis, supra,* 83 *N.J.* at 146, 416 *A.*2d 45; *accord Miller v. Miller,* 160 *N.J.* 408, 419, 734 *A.*2d 752 (1999). But to be entitled to a hearing on whether a previously-approved support award should be modified, the party moving for the modification "bears the burden of making a *prima facie* showing of changed circumstances." *Miller, supra,* 160 *N.J.* at 420, 734 *A.*2d 752 (citing *Lepis, supra,* 83 *N.J.* at 157, 416 *A.*2d 45). Specifically, the party seeking modification of an alimony award "must demonstrate that changed circumstances have substantially impaired the ability to support himself or herself." *Lepis, supra,* 83 *N.J.* at 157, 416 *A.*2d 45. This reference in *Lepis* to the ability to support oneself must be understood to mean the ability to maintain a standard of living reasonably comparable to the standard enjoyed during the marriage.

We described a two-step process in *Lepis,* as follows:

A *prima facie* showing of changed circumstances must be made before a court will order discovery of an ex-spouse's financial status.

\* \* \*

Only after the movant has made this *prima facie* showing should the respondent's ability to pay become a factor for the court to consider.

[83 *N.J.* at 157, 416 *A.*2d 45.]

In this case, Mrs. Crews must carry the burden of showing that changed circumstances have impaired her ability to maintain a standard of living reasonably comparable to the Crewses' marital standard of living. Seizing on the trial court's initial failure to define the marital standard of living, Mrs. Crews, in effect, asks this Court (1) to assume that two people previously

living together and then living in two·separate households invariably live at a lesser standard than that enjoyed in the marriage, and then (2) to hold that the improved financial status of Mr. Crews constitutes sufficient grounds to support a finding of changed circumstances.. Mr. Crews, in contrast, asks us by implication to assume the opposite: that the trial court's original award is premised on the finding of a marital standard of living. Absent the required fact-findings below, however, we decline to indulge either assumption.

A motion to modify alimony may not be used to enable a dependent spouse to share in the post-divorce good fortune of the supporting spouse. *Cf. Zazzo v. Zazzo,* 245 *N.J.Super.* 124, 584 *A.*2d 281 (App.Div.1990), (holding that children are not divorced from their parents and are entitled to share in enhanced financial status of supporting spouse without being limited to lifestyle enjoyed during marriage of parents) *certif. denied,* 126 *N.J.* 321, 598 *A.*2d 881 (1991). When modification is sought, the level of need of the dependent spouse must be reviewed in relation to the standard of living enjoyed by the couple while married. If that need is met by the current alimony award and there are no other changed circumstances, support should not be increased merely because the supporting spouse has improved financial resources.

Past holdings that refer to increases in the supporting spouse's income should not be read loosely to suggest that the improved financial status of a supporting spouse alone provides a basis for a finding of "changed circumstances" in all cases. For example, we stated in *Innes,* that "[o]ne 'changed circumstance' that warrants modification of the alimony order is an increase or decrease in the supporting spouse's income." *Innes, supra,* 117 *N.J.* at 504, 569 *A.*2d 770 (citing *Lepis, supra,* 83 at 151, 416 *A.*2d 45; *Martindell v. Martindell,* 21 *N.J.* 341, 355, 122 *A.*2d 352 (1956)). But that was said in the context of a motion for termination of alimony brought by the supporting spouse. *Id.* at 501, 569 *A.*2d 770. The payor spouse in *Innes* was fired from his job some time after the divorce had become final. He was seeking a downward modification of the initial alimony award due to a decrease in his salary. *Id.* at 501–02, 569 *A.*2d 770. The actual holding in *Innes* focused

on whether payments generated by pension benefits that previously were part of an equitable distribution award may be considered income when reconsidering the alimony obligations of the supporting spouse. *Id.* at 500, 569 *A.*2d 770.

We reaffirm the basic two-step changed-circumstances analysis set forth in *Lepis.* For twenty years now, that test has promoted finality in divorce judgments, while at the same time reasonably allowing a movant to have that finality disturbed for good cause when sufficiently compelling changed circumstances are shown. The *Lepis* test appropriately discourages an application to modify alimony merely because a supporting spouse's income has increased. There should be no examination of a supporting spouse's financial condition until a showing of changed circumstances has otherwise been made.

Some situations are consistently found to be changed circumstances warranting revision of a support award in favor of a dependent spouse. For instance, in *Lepis* we noted that

> [w]hen children are involved, an increase in their needs—whether occasioned by maturation, the rising cost of living or more unusual events—has been held to justify an increase in support by a financially able parent. . . . Their emancipation and employment may warrant reduction in their support.

[83 *N.J.* at 151–52, 416 *A.*2d 45.]

Only in very limited circumstances, however, will the financial condition of the supporting spouse satisfy the requirement of demonstrating changed circumstances. One such circumstance would be, as in *Innes,* when the supporting spouse seeks a *downward* modification of a support award. In that limited context, a substantial change in the financial condition of the supporting spouse after the entry of the divorce decree would be relevant. That information would be material in determining whether the moving party, there the supporting spouse, can show that changed circumstances have substantially affected his or her

ability to support himself or herself and the supported spouse, as required by the first step in a *Lepis* review.

On the other hand, when the moving party is the dependent spouse, the financial condition of the supporting spouse is not relevant to the first step in the *Lepis* review, in which the movant must show that circumstances have changed for him or her. The improved financial condition of the supporting spouse does not demonstrate how the dependent spouse is unable to support himself or herself at the standard of living established during the marriage. The financial condition of the supporting spouse becomes germane to the second step of the *Lepis* review, which takes place only if changed circumstances have been presented by the movant, the supported spouse. An example of a changed circumstance would be the dependent spouse's inability to reach the level of self-sufficiency anticipated by the trial court when awarding alimony, and, therefore, the dependent spouse demonstrated that he or she could not maintain the marital standard of living. *Milner v. Milner*, 288 *N.J.Super.* 209, 672 *A.*2d 206 (App.Div.1996), provides such an example. In *Milner*, a rehabilitative alimony award was converted into a permanent alimony award when the supported spouse demonstrated that she had not achieved the level of self-sufficiency that would permit her to live at the standard of living established during the marriage. *Id.* at 216, 672 *A.*2d 206. The Appellate Division noted that the failure to achieve economic self-sufficiency as anticipated by the original divorce decree constituted a "nonoccurrence" of the circumstances that supported the original alimony award. *Id.* at 214, 672 *A.*2d 206. Thus, the evidence provided a valid basis for a motion for modification was provided. *Ibid.; see also N.J.S.A.* 2A:34–23(b) (stating that modification of alimony is appropriate "upon the nonoccurrence of circumstances that the court found would occur at the time of the rehabilitative award").

We can envision other circumstances wherein the dependent spouse's inability to maintain himself or herself at a standard of living comparable to the marital standard of living would support a finding of changed circumstances. We have the benefit of re-

search on that subject. Some studies have concluded that the standard of living for a woman decreases 30% after a divorce, while men enjoy a 10% increase in living standards on average. *See* Peterson, *A Revolution of the Economic Consequences of Divorce* 61 *Am. Soc. Rev.* 528 (1996); Duncan & Hoffman, *A Reconsideration of the Economic Consequences of Divorce,* 22 *Demography* 485 (1985); Weiss, *The Impact of Marital Dissolution on Income and Consumption in Single–Parent Households,* 46 *J. Marriage & Family* 115 (1984). Those statistics are troubling.

We acknowledge that changed circumstances can be shown by a dependent spouse when inflation substantially affects a supported spouse's ability to maintain a lifestyle comparable to the marital standard of living. *Martindell, supra,* 21 *N.J.* at 353–54, 122 *A.*2d 352. But that still requires a particularized showing of the movant's circumstances. We are not persuaded that a *per se* rule should be established. Trial courts should not presume that whenever a household is split by divorce the supported spouse is no longer enjoying a lifestyle reasonably comparable to the marital standard of living. Nor should courts eliminate the movant's burden to show changed circumstances, including his or her own efforts to increase earnings, because that would turn a modification application for additional support into one that focuses only on whether the supporting spouse's financial condition has improved. That is not to suggest, however, that every supported spouse is able to enhance his or her income.

We believe the better practice is to keep the focus of the first prong of the "changed circumstances" analysis on the movant's condition, including efforts by the movant to support himself or herself. In doing so, a motion court may find that a dependent spouse who has not been able to obtain employment that would permit him or her to achieve the economic self-sufficiency anticipated at the time of divorce has shown changed circumstances.

The factors that should be considered on a motion for modification of a support award for an economically dependent

spouse are the same factors used during the initial analysis of an alimony award: "the dependent spouse's needs, that spouse's ability to contribute to the fulfillment of those needs, and the supporting spouse's ability to maintain the dependent spouse at the former standard." *Lepis, supra*, 83 *N.J.* at 152, 416 *A.*2d 45. The goal is to enter an order that allows the dependent spouse to maintain a standard of living reasonably comparable to the standard established during the marriage, while also considering the ability of the dependent spouse to become self-sufficient. *Hughes, supra*, 311 *N.J.Super.* at 33–34, 709 *A.*2d 261.

In this regard, we note that the basis for a subsequent demonstration of changed circumstances may exist in the class of cases in which the initial support award, coupled with the supported spouse's expected effort to contribute to his or her own support, was determined at the time of entry of the divorce decree to be insufficient to allow the supported spouse to maintain a standard of living reasonably comparable to the marital standard of living. Our ruling today will require trial courts to ensure that the record addresses that critical issue at the time of entry of the divorce decree in all cases. When appropriate, a trial court should expressly find that there is a higher need existing at the time of the initial award based on the standard of living maintained during the marriage, and that the higher need for support could not be met by the supporting spouse at the time of the divorce.

After such a finding is made, if a supporting spouse's later financial condition substantially improves, and if the supported spouse demonstrates that he or she is still unable to achieve a lifestyle level that is reasonably comparable to the marital lifestyle, then a *prima facie* showing of changed circumstances has been made and the burden shifts to the supporting spouse to demonstrate why additional support is unwarranted. The supported spouse's ability to do more to support herself or himself would be as relevant for a modification ruling as when establishing the initial alimony award. That latter inquiry should occur regardless of whether an award of rehabilitative alimony was includ-

ed in the initial alimony award. The supporting spouse's continuing ability to contribute and efforts at contributing, to his or her own support are not limited in their relevance only to situations in which rehabilitative alimony was awarded.

In this matter, the trial court awarded Mrs. Crews rehabilitative alimony. It is well recognized that a rehabilitative alimony award is intended to "enable [the] former spouse to complete the preparation necessary for economic self-sufficiency." *Hill v. Hill,* 91 *N.J.* 506, 509, 453 *A.*2d 537 (1982). It is "payable for a terminable period of time when it is reasonably anticipated that a spouse will no longer need support." *Dotsko v. Dotsko,* 244 *N.J.Super.* 668, 677, 583 *A.*2d 395 (App.Div.1990). But "self-support" does not mean some subsistence level; it describes the point at which the supported spouse is deemed to have reached a level at which he or she can support himself or herself in a manner reasonably comparable to the marital standard of living. *Hughes, supra,* 311 *N.J.Super.* at 31, 709 *A.*2d 261.

When rehabilitative alimony does not work as originally intended, a court may use its equitable power to order an additional alimony award. *Lepis, supra,* 83 *N.J.* at 149, 416 *A.*2d 45 (finding that "[t]he equitable authority of a court to modify support obligations in response to changed circumstances, regardless of their source, cannot be restricted").

An example may be found in *Hughes, supra,* 311 *N.J.Super.* at 32, 709 *A.*2d 261, in which the Appellate Division noted that an award of rehabilitative alimony does not mean that an order of permanent alimony always must be rejected. *See also Carter, supra,* 318 *N.J.Super.* at 50, 722 *A.*2d 977 (concluding that "obligation to pay rehabilitative alimony does not *per se* prohibit a former spouse from thereafter seeking permanent alimony"); *Milner, supra,* 288 *N.J.Super.* at 216, 672 *A.*2d 206 (holding that dependent spouse's inability, despite her efforts, to obtain level of economic self-sufficiency comparable to the marital standard of living enjoyed during her long-term marriage warranted conversion of her rehabilitative alimony award to permanent award).

## IV.

In summary, the marital standard of living is the measure for assessing initial awards of alimony, as well as for reviewing any motion to modify such awards. Regrettably, we have no assurance that in setting Mrs. Crews' support award, the trial court concluded that it would provide her with adequate resources to enable her to support herself in a lifestyle reasonably comparable to the lifestyle that existed during the marriage. That is because the trial court made no finding in respect of the Crewses' marital standard of living. This case must be remanded to the trial court for a specific finding of the standard of living established during the Crewses' marriage. Once that finding is made, then the motion to modify may be properly considered. In reviewing Mrs. Crews' motion to modify, the motion court should also re-examine the original alimony award in light of the established marital standard of living.

The motion court may conclude that the initial alimony award was not consistent with the standard of living established during the marriage but that it was all that Mr. Crews could afford at the time. If the court so finds, then it should exercise its inherent equitable power to modify alimony awards and tailor a modified alimony award that takes into account the marital standard of living and Mr. Crews' current financial condition. *Lepis, supra,* 83 *N.J.* at 148–49, 416 *A.*2d 45 (indicating that spousal agreements should be enforced without modification "only as long as they remain fair and equitable").

If the original award were found to be set properly in light of the now-determined marital standard of living, the trial court should re-examine Mrs. Crews' demonstration of changed circumstances that she argues would warrant modification of the original rehabilitative alimony award. For instance, Mrs. Crews' childcare responsibilities, especially those associated with the care of her daughter, demonstrate unusual and unfortunate events that should be carefully reviewed to see whether they reasonably prevented Mrs. Crews from achieving the greater level of "self-sufficiency" that was envisioned at the time of divorce. Mrs.

Crews was unable to meet the salary goal targeted by Mr. Crews' expert. Her argument that she reasonably believed that she could take only employment positions that provided her with scheduling flexibility so as to be responsive to her children's special needs should be fairly considered.

Mrs. Crews has asserted that she has not lived at the marriage's standard of living since the divorce, and that she never received the benefit that rehabilitative alimony is designed to promote. In fact, Mrs. Crews fared better under the *pendente lite* order than under the divorce judgment. *Supra* at 19–20, 751 A.2d at 528. The motion court's determination of the marital standard of living will be a relevant backdrop to all of these arguments.

In conclusion, once a marital standard of living is set, Mrs. Crews should be permitted to present evidence in support of a finding of "changed circumstances" sufficient to justify a modification of her support award. Only with that necessary fact-finding will a court have the appropriate context in which to determine whether Mrs. Crews, through her own available and imputed resources, requires continuing support from her ex-husband. If she shows that the marital standard of living was not met by the initial alimony award and her imputed resources, or if she otherwise shows changed circumstances, Mr. Crews' financial condition becomes a relevant issue for the court's consideration.

We cannot determine whether the relief defendant seeks, namely, a continuation and conversion to permanent alimony, or a combination of permanent and rehabilitative alimony, is appropriate in these circumstances because there has been no finding of the marital standard of living to guide our review. That is best left for the trial court on remand, in accordance with the principles stated.

### V.

We reverse the judgment of the Appellate Division and remand to the Chancery Division, Family Part, for further proceedings consistent with this opinion.

*For reversal and remandment*—Chief Justice PORITZ and Justices O'HERN, STEIN, VERNIERO and LaVECCHIA—5.

*Opposed*—None.