**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court."
Although it is posted on the internet, this opinion is binding only on the
parties in the case and its use in other cases is limited. R.1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-4321-14T2

DARYL B. WAINER,

    Plaintiff-Respondent,

v.

MIGUEL A. WAINER,

    Defendant-Appellant.

_____

        Argued December 20, 2016 – Decided July 13, 2017

        Before Judges Ostrer and Vernoia.

        On appeal from the Superior Court of New
        Jersey, Chancery Division, Family Part, Bergen
        County, Docket No. FM-02-1405-14.

        Michael Confusione argued the cause for
        appellant (Hegge & Confusione, LLC, attorneys;
        Michael Confusione, of counsel and on the
        brief).

        Daryl B. Wainer, respondent, argued the cause
        pro se.

PER CURIAM

    In this appeal from a final judgment of divorce, defendant

Miguel A. Wainer challenges the court's equitable distribution of

marital assets, the amount of alimony awarded to him, the

allocation of college expenses, the failure to require life insurance as security for alimony, and the denial of counsel fees. We affirm in part, substantially for the reasons set forth in the trial court's thirty-nine page decision; but are constrained to remand in part for a more complete statement of reasons for the court's order regarding college expenses and for an explicit determination regarding life insurance.

I.

After twenty-five years of marriage, plaintiff Daryl B. Wainer filed for divorce in December 2013. The parties' only child was then a student at a private university. Plaintiff was fifty-six years old and still active in the workplace. Defendant was seventy-nine years old and retired. Plaintiff earned a stipulated annual income of $92,419 and defendant received almost $13,000 a year in Social Security benefits. After a four-day trial conducted in late 2014 and early 2015, at which the parties were the sole witnesses, the trial court awarded defendant open durational alimony of $27,500 a year.

As for equitable distribution, the court allocated to each party equal shares of: the parties' personal property; a Fidelity investment account, which the court valued at $78,249; plaintiff's pension, valued at $122,965 and to be distributed pursuant to a qualified domestic relations order; and the plaintiff's marital

credit card debt of $25,000. Regarding an apartment in Buenos Aires that the parties beneficially owned, the court directed the parties to sell the property within two years, with defendant receiving sixty-five percent of the net proceeds and plaintiff thirty-five percent. Neither party presented an appraisal of the apartment's value, although defendant opined that it was worth $350,000, but would be more marketable within two years after trial, with an anticipated change in economic policy in Argentina.

The judge directed the parties to share equally in the payment of the roughly $34,000 in college loans for the parties' child, which were in plaintiff's name. The court also required defendant to pay forty percent of their child's senior year college costs and other child-related expenses. The court ordered plaintiff to retain defendant's share of the Fidelity account, $39,124.50, in satisfaction of these obligations and his share of the marital credit card debt.

Finally, the court ordered that both parties remain responsible for their own attorney's fees and costs. The court did not address whether plaintiff was required to maintain life insurance to secure the payment of alimony to defendant.

In his appeal, defendant raises the following points:

POINT I

THE FINAL JUDGMENT OF DIVORCE RESTS ON
INSUFFICIENT CREDIBLE EVIDENCE IN THE TRIAL
RECORD AND INFRINGES CONTROLLING NEW JERSEY
LAW.

    A. THE ALIMONY AND SUPPORT RULINGS.

    B. THE EQUITABLE DISTRIBUTION RULING.

POINT II

THE FAMILY COURT ABUSED ITS DISCRETION IN
ORDERING DEFENDANT TO PAY HIS OWN COUNSEL
FEES.

II.

We defer to the trial judge's fact findings that are rooted in her familiarity with the case, her opportunity to make credibility judgments based on live testimony, and her expertise in family matters. Cesare v. Cesare, 154 N.J. 394, 411-13 (1998). A trial court has broad discretion to determine alimony and allocate marital assets subject to equitable distribution. Clark v. Clark, 429 N.J. Super. 61, 71 (App. Div. 2012).

However, the trial court is also obliged to make necessary findings of fact and state reasons for its conclusions, to enable meaningful appellate review. Strahan v. Strahan, 402 N.J. Super. 298, 310 (App. Div. 2008); R. 1:7-4. We will vacate a trial court's award if "the court clearly abused its discretion, failed to consider all of the controlling legal principles, made mistaken

findings, or reached a conclusion that could not reasonably have been reached on sufficient credible evidence present in the record after considering the proofs as a whole." J.E.V. v. K.V., 426 N.J. Super. 475, 485 (App. Div. 2012). We also are not bound by the trial court's legal conclusions. N.J. Div. of Youth & Family Servs. v. I.S., 202 N.J. 145, 183 (2010).

## A.

Inasmuch as equitable distribution is a factor in determining alimony, see N.J.S.A. 2A:34-23(b)(10), but alimony is not a factor in determining equitable distribution, see N.J.S.A. 2A:34-23.1, we begin by assessing the trial court's equitable distribution rulings.

Defendant argues the trial judge committed several errors in equitably distributing the parties' marital assets. Specifically, defendant contends the trial court erred in distributing the parties' Buenos Aires apartment and marital debt; and failed to credit him for alleged exempt contributions to the Fidelity account. We are unpersuaded.

"The goal of equitable distribution . . . is to effect a fair and just division of marital assets." Steneken v. Steneken, 367 N.J. Super. 427, 434 (App. Div. 2004), aff'd in part, modified in part, 183 N.J. 290 (2005). In equitably distributing marital property, the trial court must engage in a three-prong analysis.

Rothman v. Rothman, 65 N.J. 219, 232 (1974). First, the trial court must determine what assets are subject to equitable distribution. Ibid. Second, the trial court must determine the value of these distributable assets. Ibid. Finally, the trial court must consider "how such allocation can most equitably be made." Ibid. Additionally, the trial court must consider the statutory factors set forth in N.J.S.A. 2A:34-23.1. Sauro v. Sauro, 425 N.J. Super. 555, 576 (App. Div. 2012), certif. denied, 213 N.J. 389 (2013). The manner of distribution remains within the trial court's broad discretion. See Steneken, supra, 367 N.J. Super. at 435.

"Generally speaking, in dividing marital assets the court must take into account the liabilities as well as the assets of the parties." Monte v. Monte, 212 N.J. Super. 557, 567 (App. Div. 1986). A trial court in a divorce matter has the authority to allocate marital assets and debt between a husband and wife. See Ionno v. Ionno, 148 N.J. Super. 259, 262 (App. Div. 1977) ("Proper allocation of the responsibility for the debts as between husband and wife does not necessarily track legal responsibility therefor to a third party."). Additionally, marital debts may be deducted from the total value of the marital estate. See Pascarella v. Pascarella, 165 N.J. Super. 558, 563 (App. Div. 1979).

We discern no merit in defendant's challenge to the court's disposition of the parties' Buenos Aires apartment, where they resided until 2005, before returning to the United States. Defendant contends the trial court failed to consider the property's value or the carrying costs associated with the sale of the apartment. He also alleged there were impediments to the sale of the apartment, including an ongoing dispute with plaintiff's son from a different relationship, who allegedly occupied the apartment for a time.

The trial court awarded defendant sixty-five percent of the net proceeds of the sale of the apartment, as well as allocated to him the responsibility to pay sixty-five percent of the carrying costs until the sale. The court awarded defendant a larger proportion of the net proceeds "in consideration of the limitation of Plaintiff's alimony obligation . . . ."

Defendant shall not be heard to complain that the court lacked sufficient evidence of the apartment's value, or its costs, to reasonably and equitably distribute the asset. It was the parties' obligation, not the court's, to present an appraised value of the property. See Lavene v. Lavene, 148 N.J. Super. 267, 276 (App. Div.) ("The parties, of course, have the primary obligation of adducing those proofs which will enable the judge to make sound and rational valuations."), certif. denied, 75 N.J. 28 (1977). In

the absence of an appraisal or other competent evidence of value, the court did the best it could.

We also shall not disturb the court's decision on the basis of defendant's contention that plaintiff's son may interfere with the sale. Although both parties testified about various judgments or claims against defendant in Argentina, none were documented by competent evidence that demonstrated a lien on the apartment or any other impediment to the sale. In any event, the testimony at trial was that the apartment was titled in the name of plaintiff's brother, with the parties' consent. The brother agreed that the property was beneficially owned by the parties and agreed to cooperate in its sale. We find there was sufficient credible evidence for the court's decision.

We also reject defendant's claim that he was entitled to a credit for contributions to the Fidelity account that he claimed were exempt from distribution. The parties used the Fidelity account for various marital expenses. Defendant testified that he contributed almost $43,000 to the Fidelity account, which he said came from the sale of a painting, gifted to him by his brother, and an inheritance. However, the trial court found both parties commingled exempt funds into this account. Indeed, the Fidelity account was initially funded with $200,000 from an otherwise exempt gift to plaintiff from her family. Moreover, the

evidence did not disclose any effort by defendant to segregate his exempt funds or to preserve their separate character.

Defendant bore the burden to prove the basis for exempting his property from the marital estate. Pascale v. Pascale, 140 N.J. 583, 609 (1995). A gift is subject to distribution if it subsidizes the marital lifestyle or is placed into an account with regular deposits of other non-exempt funds, unless the party demonstrates an unequivocal intent to separate the exempt asset. See ibid.; Tannen v. Tannen, 416 N.J. Super. 248, 283 (App. Div. 2010), aff'd o.b., 208 N.J. 409 (2011); Wadlow v. Wadlow, 200 N.J. Super. 372, 380 (App. Div. 1985). We shall not disturb the court's treatment of the Fidelity account as a marital asset.

Defendant also challenges the allocation of plaintiff's credit card debt of $25,000, which she testified was incurred to cover marital expenses. He contends the debt was incurred against his advice, and the court disregarded his own significant debt. The judge stated:

> There is no justification to relieve Defendant from liability for fifty percent (50%) of the parties' marital debt. The parties have historically used credit cards to fund any shortfall in their monthly living expenditures. It was Defendant who maintained the parties' finances until a few short months before the commencement of trial. Therefore, it is disingenuous for Defendant to claim he was unaware of the parties' financial circumstances.

9

Simply put, there was sufficient credible evidence, consisting of plaintiff's testimony, that the credit card debt was attributable to reasonable marital expenses. Defendant presented no competent documentary evidence to establish the amounts were unreasonable, or unrelated to marital expenses.

As for his claim that the judge disregarded his own significant debt, we recognize that he reported, in his December 2014 case information statement, $7000 in his own credit card debt, as well as an additional $13,000 owed to a bank. However, the record before us does not illuminate when, and for what, that debt was incurred. Notably, defendant introduced into evidence an extensive summary of his debt, with multiple attachments. Plaintiff, as well, introduced documentary evidence of defendant's credit cards, because she made payments on the accounts. However, since defendant omitted those exhibits from the appendix on appeal, we find no reason to disturb the court's ruling on this issue. See Cmty. Hosp. Grp., Inc. v. Blume Goldfaden, 381 N.J. Super. 119, 127 (App. Div. 2005) (We are not "obliged to attempt [to] review . . . an issue when the relevant portions of the record are not included."); R. 2:6-1(a) (stating appellant must include in the appendix "such other parts of the record . . . as are essential to the proper consideration of the issues").

Defendant next contends the trial court's alimony award was insufficient, given his age and earning capacity. Specifically, defendant argues the trial court "did not meaningfully weigh and balance the [statutory] factors." We disagree.

The purpose of alimony is to "provide a dependent spouse with the wherewithal to 'maintain a lifestyle that is reasonably comparable to the standard of living enjoyed during the marriage.'" Steneken, supra, 367 N.J. Super. at 434 (quoting Crews v. Crews, 164 N.J. 11, 17 (2000)). In making this determination, the court should also consider the payor's earnings and ability to support the payee. See Crews, supra, 164 N.J. at 27; Hughes v. Hughes, 311 N.J. Super. 15, 35 (App. Div. 1998) (noting that consideration of the supporting spouse's current earnings is relevant in determining whether he or she can support the dependent spouse to the level enjoyed during marriage, or, in some circumstances, a reduced level). "The court should state whether the support authorized will enable each party to live a lifestyle 'reasonably comparable' to the marital standard of living." Crews, supra, 164 N.J. at 26.

Additionally, the trial court must make specific findings, considering the fourteen factors outlined under N.J.S.A. 2A:34-23(b). These factors include:

(1) The actual need and ability of the parties to pay;

(2) The duration of the marriage or civil union;

(3) The age, physical and emotional health of the parties;

(4) The standard of living established in the marriage or civil union and the likelihood that each party can maintain a reasonably comparable standard of living, with neither party having a greater entitlement to that standard of living than the other;

(5) The earning capacities, educational levels, vocational skills, and employability of the parties;

(6) The length of absence from the job market of the party seeking maintenance;

(7) The parental responsibilities for the children;

(8) The time and expense necessary to acquire sufficient education or training to enable the party seeking maintenance to find appropriate employment, the availability of the training and employment, and the opportunity for future acquisitions of capital assets and income;

(9) The history of the financial or non-financial contributions to the marriage or civil union by each party including contributions to the care and education of the children and interruption of personal careers or educational opportunities;

(10) The equitable distribution of property ordered and any payouts on equitable distribution, directly or indirectly, out of current income, to the extent this consideration is reasonable, just and fair;

(11) The income available to either party through investment of any assets held by that party;

(12) The tax treatment and consequences to both parties of any alimony award, including the designation of all or a portion of the payment as a non-taxable payment;

(13) The nature, amount, and length of pendente lite support paid, if any; and

(14) Any other factors which the court may deem relevant.

[N.J.S.A. 2A:34-23(b).]

For most of their marriage, the parties lived a modest, middle-class life. From 1990 to 2005, the parties resided in Argentina, living in aparthotels and rental properties, before purchasing the apartment in Buenos Aires in 2000. While in Argentina, defendant invested in a bicycle business, which dissolved less than a year later. The parties soon thereafter opened a private language school, with plaintiff responsible for teaching and developing the curriculum, and defendant handling the marketing and finances. However, the parties later returned to New Jersey in 2005, during the financial crisis in Argentina.

After returning to New Jersey, plaintiff served as the primary breadwinner for the family. At the time of trial, she was employed by a public school district, earning a stipulated gross annual income of $92,419. In addition to working full-time, she was

pursuing a doctoral degree in education (Ed.D.).  To support her own educational endeavors, she had borrowed $61,000 in unsubsidized student loans.

Defendant, on the other hand, has not experienced the same success since returning to the United States.  For a time, he earned modest commissions as a life insurance agent, but that source of income dried up.  At the time of trial, he was almost eighty years old, retired, and collecting approximately $13,000 in annual Social Security benefits.[1]

In determining plaintiff's alimony obligation, the trial court examined each of the statutory factors outlined in N.J.S.A. 2A:34-23(b).  Although defendant challenges the court's findings as to several of these factors, we are satisfied, based on our thorough review of the record, that the court's findings were supported by "adequate, substantial, credible evidence."  Cesare, supra, 154 N.J. at 412.

After considering each factor, the court set plaintiff's open durational alimony obligation at a fixed amount of $27,500 per year.  Notably, in determining plaintiff's alimony obligation, the

---

[1] Defendant's newly minted claim, in his appellate brief, that his benefits are actually $11,616 lacks any support in the record and is at odds with defendant's own CIS and trial testimony.

trial court considered both party's individual budgets and combined net incomes:

> Plaintiff earns gross wages of $92,419.00 and Defendant social security wages of $13,000.00. These sum nets cannot cover either of the parties' budgets, let alone both of their budgets. The point being, that even while together, their funds were insufficient to meet their living expenses; hence the $25,000 in credit card debt used to supplement living expenses.
>
> . . . .
>
> The Court clearly recognizes that Plaintiff, upon conference of her doctoral degree, has the potential to increase her earnings and can only surmise that it is the eventuality of the situation. However, that situation does not exist today and the Court cannot determine an alimony award based upon predictions of future earnings, which may never materialize. Plaintiff's current income must be used and that income is $92,419.00.
>
> The Court further recognizes that Defendant is at a distinct age disadvantage and is entitled to retire at age eighty (80), albeit a healthy 80. Therefore, the likelihood of any appreciable increase over and above his social security earning is negligible.
>
> . . . .
>
> The fact is that neither party will be able to maintain the formal marital lifestyle. Using Plaintiff's current budget of $8,274.00 and Defendant's current budget of $5,294.00, the Court finds that Plaintiff shall pay to Defendant open durational alimony of $27,500.00 per year.

Defendant misplaces reliance on Guglielmo v. Guglielmo, 253 N.J. Super. 531, 543-44 (App. Div. 1992), in support of his contention that the trial court failed to consider plaintiff's earning potential in awarding alimony. In Guglielmo, we explained:

> Where a family's expenditures and income had been consistently expanding, the dependent spouse should not be confined to the precise lifestyle enjoyed during the parties' last year together. Defendant's income picture should be viewed with an eye toward the future, since it was to this potential that both parties contributed during the marriage.
>
> [Ibid.]

Here, the record fails to demonstrate that plaintiff's income has been consistently expanding. Plaintiff testified to nothing more than her hope that acquiring a doctorate would boost her income. There was no evidence suggesting that she would automatically qualify for a promotion or raise. As such, we discern no error in the court's decision to utilize plaintiff's current income in determining her alimony obligation. Additionally, should plaintiff experience a significant increase in pay after receiving her Ed.D., defendant can seek a modification of alimony based on changed circumstances. See Lepis v. Lepis, 83 N.J. 139, 146 (1980) (stating that alimony obligations are "always subject to review and modification on a showing of 'changed circumstances.'"); see also Quinn v. Quinn, 225 N.J. 34, 49 (2016)

(stating "changed circumstances include . . . an increase or decrease in the income of the supporting . . . spouse") (internal quotation marks and citation omitted)).

Defendant's remaining challenges to the alimony award lack sufficient merit to warrant an extended discussion. R. 2:11-3(e)(1)(E). We add that defendant's reliance on marital fault is misdirected, as marital fault is generally irrelevant and the record is bereft of any evidence establishing exceptional fault of the kind sufficient to impact alimony. See Mani v. Mani, 183 N.J. 70, 91-92 (2005); Clark, supra, 429 N.J. Super. at 74. Defendant also objects to the provision in the judgment that alimony would be subject to suspension or termination if he cohabits with an unrelated female; however, the provision simply complies with N.J.S.A. 2A:34-23(n).

C.

Defendant next contends the trial court erred in obligating him to pay fifty percent of the debt already incurred by plaintiff to finance their child's college education, and forty percent of future educational costs. Defendant contended he lacked the ability to pay. He also argued that he opposed plaintiff's and his child's choice of an out-of-state private university; instead, he favored his child's attendance at City University of New York,

where the child could have lived at home and, he argued, reduced total educational costs.

Although attending an out-of-state private university, the child received substantial scholarships that covered all but $22,000 of freshman year expenses, and $12,000 of sophomore year expenses. Plaintiff borrowed $34,000 to cover the remaining costs. She anticipated utilizing a college savings fund for junior year shortfalls and borrowing again to finance senior year expenses. Payments on the loans were deferred.

Plaintiff also testified that the parties' child had a work-study job, which generated income used to cover incidental expenses. She also stated that the child remained out-of-state the previous summer, having secured a paid summer internship. However, she did not provide detailed evidence of the costs of supporting the child, outside the college expenses.

In allocating half of the $34,000 debt, the court stated:

> The Court further finds that the Defendant shall share equally in the payment of [the child's] school loans incurred to date. [The child], through scholarships, has been able to reduce the actual out of pocket costs for [the] education to a level commensurate with or actually less than the cost of a state university. That fact, coupled with the importance placed upon continuing education by the parties, both of whom hold Masters Degrees and one of whom . . . continues to pursue a doctoral degree at age fifty-seven (57) makes clear that if

they had remained an intact family, they would have done everything possible to fund these costs on [the child's] behalf.

In allocating forty percent of senior year costs, the court stated

Certain college accounts have been set aside for [the child]. The accounts have an approximate value of $15,000.00. This amount is anticipated to be sufficient to cover out-of-pocket expenses for [the child's] junior year . . . . [S]enior year expenses, based upon historical out-of-pocket expenses, are expected to be approximately $22,000.00, provided [the child] receives scholarships at a similar level to those received in . . . freshman and sophomore years. The parties shall share in [the child's] remaining college expenses, with Plaintiff funding sixty percent (60%) and the Defendant forty percent (40%). . . . Plaintiff shall retain the $10,754.50 remaining in the Fidelity Investments account in full satisfaction of Defendant's forty percent (40%) contribution to [the child's] senior year expenses.

Trial courts have substantial discretion in determining parents' contribution to college expenses. See Jacoby v. Jacoby, 427 N.J. Super. 109, 116 (App. Div. 2012); see also Foust v. Glaser, 340 N.J. Super. 312, 315 (App. Div. 2001). However, a trial court's decision will be reversed "if the court ignores applicable standards[.]" Gotlib v. Gotlib, 399 N.J. Super. 295, 309 (App. Div. 2008).

In Newburgh v. Arrigo, 88 N.J. 529, 545 (1982), the Court set forth a list of twelve factors for courts to consider when

determining a parent's contribution for a child's educational expenses:

> (1) whether the parent, if still living with the child, would have contributed toward the costs of the requested higher education; (2) the effect of the background, values and goals of the parent on the reasonableness of the expectation of the child for higher education; (3) the amount of the contribution sought by the child for the cost of higher education; (4) the ability of the parent to pay that cost; (5) the relationship of the requested contribution to the kind of school or course of study sought by the child; (6) the financial resources of both parents; (7) the commitment to and aptitude of the child for the requested education; (8) the financial resources of the child, including assets owned individually or held in custodianship or trust; (9) the ability of the child to earn income during the school year or on vacation; (10) the availability of financial aid in the form of college grants and loans; (11) the child's relationship to the paying parent, including mutual affection and shared goals as well as responsiveness to parental advice and guidance; and (12) the relationship of the education requested to any prior training and to the overall long-range goals of the child.
>
> [Ibid.]

The Legislature thereafter codified factors to consider when evaluating a claim for contribution, including college expenses. See Gotlib, supra, 399 N.J. Super. at 309 (citing N.J.S.A. 2A:34-23(a)). Consequently, in determining a parent's college contribution obligation, "a trial court should balance the statutory criteria of N.J.S.A. 2A:34-23(a) and the Newburgh

factors, as well as any other relevant circumstances, to reach a fair and just decision . . . ." Gac v. Gac, 186 N.J. 535, 543 (2006).

Here, the trial court failed to address either the Newburgh or the statutory factors under N.J.S.A. 2A:34-23(a). In particular, the court treated the incurred college debt as a liability subject to equitable distribution, like any other marital debt. This was mistaken, as the college expenses — whether prospective or incurred — should have been analyzed within the Newburgh-Gac framework.

Therefore, we are constrained to remand this portion of the judgment, for the trial court to make further findings consistent with Newburgh, Gac, and N.J.S.A. 2A:34-23(a). See Raynor v. Raynor, 319 N.J. Super. 591, 617 (App. Div. 1999) (reversing a trial court's college contribution obligation, where the trial court failed to consider the factors listed in Newburgh or the parties' financial circumstances.). We express no opinion as to whether this analysis should yield a different result. However, we note that the court did not explicitly consider the child's earning ability, and capacity to bear responsibility for some of the borrowing. Notably, he is pursuing a degree in a field that has a positive job outlook.

Defendant also argues the trial court erred in failing to direct plaintiff to maintain life insurance for his benefit, as security for the payment of alimony. N.J.S.A. 2A:34-25 expressly provides trial courts with the authority to order "either spouse or partner to maintain life insurance for the protection of the former spouse, partner, or the children of the marriage or civil union in the event of the payer spouse's or partner's death." See Jacobitti v. Jacobitti, 135 N.J. 571, 580 (1994); Claffey v. Claffey, 360 N.J. Super. 240, 262-63 (App. Div. 2003). Here, defendant requested the court to direct plaintiff to name him as a beneficiary to plaintiff's three life insurance policies.[2]

The trial court did not expressly address the issue of plaintiff securing her payment of alimony with life insurance. Rather, the judgment of divorce only addressed whether to require defendant to obtain insurance on his life, which the court ultimately rejected because of his age. As the trial court failed to consider plaintiff's maintenance of life insurance for defendant's benefit, we are constrained to remand this issue for

---

[2] At trial, defendant testified that plaintiff's policies include a workplace life insurance policy worth "three times her yearly salary," a AAA life insurance policy worth "100,000 or 200,000," and an AXA life insurance policy worth "about 200,000." He proposed that he be named a fifty-percent beneficiary on all these policies.

further consideration. We leave it to the court's discretion to determine whether to direct plaintiff to maintain life insurance, and if so, the amount to be secured.

E.

Lastly, we address defendant's argument that the trial judge abused her discretion in ordering him to pay his own counsel fees. He claims plaintiff is in a superior financial position and he has limited resources to afford these fees. We find this argument without merit. Trial courts have the authority to award counsel fees in a family law action under N.J.S.A. 2A:34-23 and Rule 5:3-5(c). "[T]he award of counsel fees in a matrimonial action is discretionary with the trial court and an exercise thereof will not be disturbed in an absence of a showing of abuse." Chestone v. Chestone, 322 N.J. Super. 250, 258 (App. Div. 1999).

In her written decision, the judge examined the nine factors set forth in Rule 5:3-5(c) and made specific findings as to each. Notably, in considering "the ability of the parties to pay their own fees or to contribute to the fees of the other party," Rule 5:3-5(c)(2), the trial court held:

> In the instant matter, it appears that neither of the parties have significant liquid capital assets from which to satisfy their own counsel fees. The sum remaining in the Fidelity investments Account has been allocated to the payment of debt, but remains a resource for Plaintiff. Otherwise, Plaintiff would be

23

required to again borrow against her pension, having already taken a debt consolidation loan.

Defendant has no liquidity.

Given our deferential standard of review and the trial court's thorough consideration of the necessary factors outlined under Rule 5:3-5(c), we find no reason to interfere with the trial court's decision and affirm its denial of attorney's fees.

F.

In conclusion, we affirm the court's judgment as it pertains to alimony, equitable distribution, and counsel fees; and remand for further consideration the issues of college expenses and life insurance.

Affirmed in part and remanded in part. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-4321-14T2