**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1639-16T1

L.S.,

       Plaintiff-Respondent/
       Cross-Appellant,

v.

M.S.,[1]

       Defendant-Appellant/
       Cross-Respondent.

_____

Argued March 5, 2019 – Decided April 17, 2019

Before Judges Yannotti, Rothstadt and Natali.

On appeal from Superior Court of New Jersey, Chancery Division, Family Part, Morris County, Docket No. FM-14-0531-13.

Salvatore P. DiFazio argued the cause for appellant/cross-respondent (The DiFazio Law Office, attorneys; Salvatore P. DiFazio, on the briefs).

---

[1] We use initials to identify the parties and their children because some of the facts discussed are taken from records that are not available for public access. See R. 1:38-3(d).

Katherine E. Giusti argued the cause for respondent/cross-appellant (Celli, Schlossberg, De Meo & Giusti, PC, attorneys; Katherine E. Giusti, on the brief).

PER CURIAM

Defendant appeals and plaintiff cross-appeals from the amended supplemental judgment of divorce (JOD) dated May 19, 2016. They also appeal from the trial court's order dated December 2, 2016, which denied the parties' motions for a new trial, and granted in part, and denied in part, their applications for other relief. For the reasons that follow, we affirm in part, reverse in part, and remand the matter to the trial court for further proceedings.

I.

The parties were married in June 2001. Two children were born of the marriage: J.S., who was born in December 2003, and Z.S., who was born in February 2006. J.S. is autistic and suffers from certain behavioral issues. Defendant is a physician who operated a private practice. He also has an interest in a surgery center. Prior to the marriage, plaintiff was diagnosed with Bipolar II disorder. She is a medical doctor, board-certified in internal medicine and bariatric medicine. Plaintiff has not practiced internal medicine; however, from January 2007 to June 2012, she operated a bariatric medicine practice.

A-1639-16T1

Plaintiff filed a complaint for divorce on October 24, 2012, and an amended complaint on June 18, 2013. In February 2013, the court entered an order, which required defendant to pay plaintiff pendente lite support of $7000 per month. In June 2013, the court increased the amount of support to $10,000 per month. Thereafter, the parties engaged in extensive motion practice regarding defendant's court-ordered financial obligations, as well as custody of the children and parenting time.

In 2015, the parties executed an agreement, in which the parties agreed to share joint legal custody of the children, with defendant designated as the parent of primary residence. Under the agreement, plaintiff had 104 overnights, and parenting time after school twice during the week.

During the marriage, the parties acquired various assets, including a residence in Mendham, which was encumbered by a mortgage in defendant's name, and a home equity line of credit (HELOC), for which the parties were both responsible. In March 2014, the court entered an order requiring that the marital residence be listed for sale; however, defendant did not comply with the order. Because defendant did not make the mortgage payments, the property went into foreclosure and was later sold at a sheriff's sale.

A-1639-16T1

After the parties had engaged in substantial discovery, the judge conducted a trial in the matter. The judge heard testimony from the parties; David Stein, Ph.D.; the court-appointed vocational expert, Sharon Levine, M.A.; plaintiff's vocational expert, Anthony J. Santye; defendant's accountant, James Molloy; the court-appointed real estate appraiser, Dennis Handel; the court-appointed realtor; and M.W., plaintiff's boyfriend.

On May 5, 2016, the judge placed an oral decision on the record. The judge filed a supplemental JOD on May 18, 2016, and an amended supplemental JOD on May 19, 2016. Thereafter, the parties filed motions for a new trial and other relief. On November 18, 2016, the judge rendered an oral decision on the motions and memorialized his decision in an order filed on December 2, 2016. Defendant's appeal and plaintiff's cross-appeal followed.

While the appeal was pending, we granted defendant's motion for a temporary remand so that he could file a motion for modification of his alimony obligation. In his motion, defendant argued that since the filing of the amended supplemental JOD, circumstances had changed. Defendant claimed he was earning substantially less than when the court made its decision.

Plaintiff opposed the motion. On January 31, 2018, the court entered an order denying the motion. The court found that defendant had not established a

prima facie case of changed circumstances. Defendant filed a motion for reconsideration. On June 25, 2018, the court entered an order denying the motion. Defendant did not amend his notice of appeal to include a challenge to the June 25, 2018 order.

Defendant appeals and argues that the trial judge erred by: (1) erroneously calculating the credit due under Mallamo v. Mallamo, 280 N.J. Super. 8 (App. Div. 1995) for his overpayments of pendente lite support; (2) awarding alimony; (3) failing to address certain credits he requested at trial; (3) failing to take into consideration the high incomes and other extraordinary expenses of the parties' children in calculating plaintiff's child support obligation; and (4) awarding plaintiff attorney's fees.

Plaintiff cross-appeals and argues that: (1) the judgment does not address certain issues the parties had resolved; (2) the judge made decisions on the record on May 5, 2016, but did not memorialize these decisions in the judgment; (3) the judge erred by failing to make decisions on certain issues raised during the trial; (4) the judge failed to make adequate findings of fact and conclusions of law; (5) the court's decisions on alimony and child support were not based on the relevant statutory factors; (6) the court erred by failing to give her credit for monies defendant borrowed on the HELOC, and the increased mortgage debt

created when defendant failed to pay the mortgage payments on the marital residence; and (7) the court's decision on attorney's fees represents a mistaken exercise of discretion.

## II.

As noted, both parties challenge the court's decision on alimony. We note that an alimony award will be upheld on appeal unless the trial court failed to apply the correct legal standards or abused its discretion by making findings that are not supported by sufficient credible evidence in the record. J.E.V. v. K.V., 426 N.J. Super. 475, 485 (App. Div. 2012) (citing Heinl v. Heinl, 287 N.J. Super. 337, 345 (App. Div. 1996)).

### A.  Standards that Govern the Award of Alimony

We defer to the trial court's findings of fact, "when the evidence is largely testimonial and involves questions of credibility." Cesare v. Cesare, 154 N.J. 394, 412 (1998) (quoting In re Return of Weapons to J.W.D., 149 N.J. 108, 117 (1997)). Moreover, because of the Family Part's "special jurisdiction and expertise in family matters," we "accord deference to family court factfinding." Id. at 413.

"[T]he goal of a proper alimony award is to assist the supported spouse in achieving a lifestyle that is reasonably comparable to the one enjoyed while

living with the supporting spouse during the marriage." Crews v. Crews, 164 N.J. 11, 16 (2000). Therefore, the marital lifestyle "serves as the touchstone for the initial alimony award and for adjudicating later motions for modification of the alimony award." Id. at 16. N.J.S.A. 2A:34-23(c) provides that:

> the court shall also consider the practical impact of the parties' need for separate residences and the attendant increase in living expenses on the ability of both parties to maintain a standard of living reasonably comparable to the standard of living established in the marriage or civil union, to which both parties are entitled, with neither party having a greater entitlement thereto.

In deciding whether to award alimony, the trial court must consider the following factors:

> (1)  The actual need and ability of the parties to pay;
>
> (2)  The duration of the marriage or civil union;
>
> (3) The age, physical and emotional health of the parties;
>
> (4)  The standard of living established in the marriage or civil union and the likelihood that each party can maintain a reasonably comparable standard of living, with neither party having a greater entitlement to that standard of living than the other;
>
> (5)  The earning capacities, educational levels, vocational skills, and employability of the parties;
>
> (6)  The length of absence from the job market of the party seeking maintenance;

7

(7)   The parental responsibilities for the children;

(8) The time and expense necessary to acquire sufficient education or training to enable the party seeking maintenance to find appropriate employment, the availability of the training and employment, and the opportunity for future acquisitions of capital assets and income;

(9) The history of the financial or non-financial contributions to the marriage or civil union by each party including contributions to the care and education of the children and interruption of personal careers or educational opportunities;

(10)  The equitable distribution of property ordered and any payouts on equitable distribution, directly or indirectly, out of current income, to the extent this consideration is reasonable, just and fair;

(11) The income available to either party through investment of any assets held by that party;

(12) The tax treatment and consequences to both parties of any alimony award, including the designation of all or a portion of the payment as a non-taxable payment;

(13) The nature, amount, and length of pendente lite support paid, if any; and

(14) Any other factors which the court may deem relevant.

[N.J.S.A. 2A:34-23(b).]

Where, as in this case, the duration of the marriage is shorter than twenty years, the duration of the alimony award may not exceed the length of the marriage, absent exceptional circumstances. N.J.S.A. 2A:34-23(c).

B. The Trial Court's Decision on Alimony

The judge made findings on the factors in N.J.S.A. 2A:34-23(b). On factor one, the judge found it was "very hard to evaluate" the actual need of the parties because "[b]oth parties appear to be in difficult financial circumstances." The judge noted that plaintiff had refused to return to work and defendant had certain "economic issues" due in part to changes in the medical profession. The judge stated, however, that defendant had made substantial credit card payments, which were at a level consistent with the marital lifestyle, and had no credit card debt.

On factors two and three, the judge observed that the parties had been married for eleven years. The parties were in their forties and appeared to be in good health. The judge noted that plaintiff had been diagnosed with bipolar disorder, but found that this disorder did not inhibit plaintiff's ability to work and earn income.

Regarding factor four, the judge found that neither party would be able to maintain the standard of living the parties enjoyed during the marriage, which

9

was established when they were both working.  The judge noted that the marital lifestyle included "a limited savings component."  The judge found that the monies that the parties had saved had been spent primarily on legal and expert fees in the divorce litigation.  The judge added that defendant had experienced "some financial setbacks" and he was essentially the sole means of financial support for the children.

On factor five, the judge found Stein's opinion on plaintiff's employability credible.  At trial, Stein testified that despite her bipolar disorder, plaintiff was employable as a general practitioner of medicine and as an anesthesiologist.  He opined that plaintiff could earn $180,000 to $235,000 each year if she worked full-time in the practice of internal medicine.  The judge rejected Levine's opinion that plaintiff was not employable as a physician due to her psychological problems.

The judge observed that plaintiff had earned $83,000 one year by seeing patients on a part-time basis.  The judge doubled that amount to reflect full-time employment treating patients, and found that plaintiff could earn a minimum of $166,000 per year.  The judge noted that while plaintiff was working, she could have taken a higher salary, but she chose to reinvest her earnings in her practice.

A-1639-16T1

The judge further found that it was difficult to determine defendant's annual income because defendant stopped drawing a salary from his practice in the spring of 2014. The judge accepted defendant's testimony that the revenue from the practice had declined due to changes in the medical profession, his increased parental responsibilities, and other reasons.

The judge noted, however, that defendant had maintained the same level of spending that he had maintained during the marriage, and paid his girlfriend a salary to watch the children of $42,000 per year, plus a stipend for her vehicle. The judge found that, in light of his past earnings, defendant's yearly income was about $425,000.

Regarding factor six, the judge stated that plaintiff's absence from the job market did not weigh in her favor because she had voluntarily stopped working. The judge noted, however, that plaintiff's absence from the job market was relatively short-term, in comparison to the length of the marriage. The judge observed that this was "not the type of case" where a parent remained at home during the entire marriage to raise the children.

On factor eight, the judge stated that plaintiff did not require time and resources to regain employment or obtain additional training. As to factor nine, the judge found that while the parties were working, they made financial and

11

non-financial contributions in different ways. During that time, plaintiff had a more active role with the children, and defendant provided most of the financial support.

With regard to factors ten and eleven, the judge found the equitable distribution of property and investment income were not significant factors because assets the parties acquired during the marriage had been used to fund this litigation, and the equitable distribution of the remaining assets had "essentially been resolved." On factor twelve, the judge determined that alimony would be taxable income for plaintiff and deductible by defendant.

Addressing factor thirteen, the judge found that the award to plaintiff of pendente lite support in the amount of $10,000 per month was inequitable. The judge stated that the award had been on the erroneous assumption that plaintiff had been out of work for several years, when it had not even been, in fact, plaintiff had been out of work for less than several months. The judge found that defendant was entitled to a credit for his overpayments of pendente lite support.

The judge determined that defendant should have paid monthly support during the litigation as follows: (1) $7000 from November 27, 2012, to December 31, 2013 (based on plaintiff's imputed annual income of $166,000

A-1639-16T1

and defendant's gross annual income of $425,000); (2) $6667 from January 1, 2014, to December 31, 2014 (based on plaintiff's imputed annual income of $185,000 and defendant's gross annual income of $425,000); and (3) $6000 from January 1, 2015, to April 16, 2016 (based on plaintiff's imputed annual income of $210,000 to plaintiff and defendant's gross annual income of $425,000).

The judge further found that for May 1, 2016, to May 27, 2020, the monthly alimony award should be $4500. This was based on imputed annual income to plaintiff of $210,000 and defendant's gross annual income of $425,000. In calculating this award, the judge applied a monthly deduction of $451 to account for plaintiff's failure to contribute to the children's support. The judge also made an additional deduction in consideration of the additional expenses that would be incurred for J.S.'s needs, and because defendant will be solely responsible for the children's extracurricular expenses.

C. Defendant's Arguments on Appeal Regarding Alimony

1. Income Imputed to Plaintiff

Defendant argues that the amount of income the judge imputed to plaintiff was too low and against the weight of the competent evidence produced at trial. He contends the judge erred by granting plaintiff alimony, retroactively or

prospectively, in view of the amount of income that should have been imputed to plaintiff. We disagree.

We are convinced that there is sufficient credible evidence in the record to support the trial court's decision to impute plaintiff's annual income of $166,000 through December 2013; $185,000 through December 2014; and $210,000 after January 2015. The judge's findings are supported by, among other evidence, plaintiff's work history, the record of her earnings, and Stein's testimony regarding her employability and potential earnings.

2. Credit for Overpayments of Pendente Lite Support

Defendant argues that the judge erred by calculating his credit under Mallamo. He contends the judge failed to consider the tax effect of his pendente lite support payments. In his decision of May 5, 2016, the judge noted that defendant had not presented sufficient evidence showing the tax consequences of his support payments. The judge stated that defendant could file a motion for reconsideration if he believed that the court had failed to consider any evidence in the record on that issue.

In his motion for reconsideration, defendant again asserted that the court erred in its calculation of the Mallamo credit, but cited no evidence that the court had failed to consider regarding taxes. The judge refused to reconsider his

14

decision, explaining that defendant had not provided sufficient testimony or evidence that would permit the court "to determine the specifics of the tax impact of its award."

On appeal, defendant argues that the judge should have simply applied his applicable tax rate to the amount of the pendente lite payments. However, the judge cannot be faulted for requiring defendant to provide competent evidence detailing the tax consequences of the payments. Thus, the record supports the court's determination that defendant failed to submit sufficient, competent evidence for the court to award a credit for taxes defendant allegedly paid on the pendente lite support payments.

Based on this record, any credit would have been based on pure speculation. See Orgler v. Orgler, 237 N.J. Super. 342, 355 (App. Div. 1989) (disapproving the practice of considering hypothetical tax consequences in relation to equitable distribution of property). The trial court's ruling on this issue was not a mistaken exercise of discretion.

3. Plaintiff's Need for Alimony

Defendant contends the judge erred by awarding plaintiff alimony because she failed to establish a need for it. Defendant asserts that according to plaintiff's case information statement (CIS), she only requires $9744 to meet her

15

monthly expenses, and a minimum annual salary of $166,000 provides plaintiff sufficient funds to meet her expenses.

However, as stated previously, the goal of an alimony award is to enable the supported spouse to "achieve[] a lifestyle that is reasonably comparable to the one enjoyed while living with the supporting spouse during the marriage." Crews, 164 N.J. at 16. The alimony award in this case will assist plaintiff in achieving that lifestyle. Therefore, she established a need for alimony.

4. Ability to Pay

Defendant contends the alimony award should be set aside because he cannot afford to pay it. We disagree. This contention is not supported by the evidence presented at trial. As noted, the judge attributed yearly income to defendant of $425,000, and there is sufficient credible evidence in the record to support that finding.

According to the tax returns, defendant earned the following amounts in salary from his practice: $323,000 in 2008; $405,000 in 2009; $135,215 in 2010; $415,288 in 2011; $518,827 in 2012; and $395,537 in 2013. The judge stated that defendant's earnings in 2012 were "a little bit of a high watermark" in comparison to his salaries in the other years; therefore, the judge did not include defendant's earnings in 2012 in determining his annual income.

A-1639-16T1

The judge accepted defendant's claim that revenue from his practice had declined due to changes in the medical profession. The judge pointed out, however, that during the litigation, defendant had continued to spend at the level he spent before the parties separated. Moreover, as we noted previously, defendant had been paying his girlfriend a yearly salary of $42,000, plus a stipend for her vehicle. Thus, the record supports the judge's finding that defendant has the ability to pay the alimony award.

D. Plaintiff's Arguments Regarding Alimony

Plaintiff argues that the judge erred by imputing too much income to her. She asserts that the judge did not base his decision on alimony on the statutory factors in N.J.S.A. 2A:34-23. She contends the judge's decision was not supported by the testimony of the experts, and represents a misunderstanding of the facts. In addition, plaintiff argues that the judge erred in calculating defendant's income.

We find no merit in these contentions. As we stated previously, there is sufficient credible evidence in the record to support the judge's finding that plaintiff is capable of earning annual income of $166,000 through December 2013; $185,000 through December 2014; and $210,000 after January 2015. The record also supports the judge's finding that defendant's annual income is

A-1639-16T1

$425,000. Furthermore, the judge carefully reviewed the statutory factors in N.J.S.A. 2A:34-23, and there is sufficient credible evidence to support the judge's findings regarding these factors.

### 1. Cohabitation

Plaintiff argues the judge erred by failing to include in the final judgment his finding that she did not cohabitate with M.W., her boyfriend. The judge's finding on co-habitation was one of numerous findings made to support the decision to award plaintiff alimony. The judge's finding that plaintiff did not cohabitate with M.W. is part of the record of the May 5, 2016 proceeding. The judge was not required to incorporate that specific finding in the judgment; however, on remand, plaintiff may ask the judge to do so.

### 2. Appointment of Business Accountant

Plaintiff argues that the judge should have included in the judgment a decision on the appointment of a business accountant to review defendant's income periodically while he is obligated to pay alimony. During the May 5, 2016 proceeding, the judge commented that he was considering issuing an order directing a business accountant to submit annual reports regarding defendant's income for the benefit of counsel, at least through May 2020, when defendant's obligation to pay alimony ends.

18

The judge did not include such an order in the final judgment. This was not, however, a mistaken exercise of discretion. The judge was not required to appoint a business accountant to review defendant's income on a going-forward basis. If at some point in the future plaintiff has grounds to believe that the court should appoint an accountant for that purpose, she may file a motion in the trial court seeking that relief. We express no view on whether the court should grant such a motion.

Accordingly, we reject defendant's and plaintiff's challenges to the alimony award. We conclude the judge's decision to award alimony to plaintiff in the amounts and for the periods specified in the judgment is consistent with applicable legal principles and supported by sufficient credible evidence in the record.

III.

Both parties challenge the trial court's decision on child support. We note that the award of child support is committed to the sound discretion of the trial court and the award will not be disturbed on appeal "unless it is manifestly unreasonable, arbitrary, or clearly contrary to reason or to other evidence, or the result of whim or caprice." Gotlib v. Gotlib, 399 N.J. Super. 295, 309 (App.

Div. 2008) (quoting <u>Foust v. Glaser</u>, 340 N.J. Super. 312, 315-16 (App. Div. 2001)).

A. <u>Standard for the Award of Child Support</u>

When awarding child support, the court is required to consider the following factors:

(1)  Needs of the child;

(2)  Standard of living and economic circumstances of each parent;

(3)  All sources of income and assets of each parent;

(4)  Earning ability of each parent, including educational background, training, employment skills, work experience, custodial responsibility for children including the cost of providing child care and the length of time and cost of each parent to obtain training or experience for appropriate employment;

(5)  Need and capacity of the child for education, including higher education;

(6)  Age and health of the child and each parent;

(7)  Income, assets and earning ability of the child;

(8)  Responsibility of the parents for the court-ordered support of others;

(9)  Reasonable debts and liabilities of each child and parent; and

(10)  Any other factors the court may deem relevant.

[N.J.S.A. 2A:34-23(a).]

Furthermore, when deciding the amount of child support, the trial court must apply the child support guidelines, which are set forth in Appendix IX to Rule 5:6A.

B. The Trial Court's Decision on Child Support

The judge found that during the marriage, the parties spent "thousands of dollars" on the children's care and activities. The judge pointed out that neither party had submitted proof establishing the actual costs of the children's activities, health insurance, or unreimbursed medical expenses.

The judge stated, however, that based on the parties' CISs, those costs were likely to be significant, especially as the children get older. The judge also observed that J.S. is a special needs child, and he will continue to require special care.

The judge noted that since the parties separated, defendant has been completely responsible for the children's expenses because plaintiff had refused to work. The judge found plaintiff's failure to return to work was inequitable and unfair to the children, who were entitled to financial support from both parents.

To account for plaintiff's failure to contribute to the children's financial support, the judge reduced plaintiff's monthly alimony award from $4951.33 to $4500 beginning on May 30, 2016. Regarding parenting time, the judge stated that plaintiff had sixty-five overnight visits with the children, or only 18% of the overnights.

Using the sole parenting worksheet in the guidelines, the judge calculated support based on defendant's income of $425,000 and plaintiff's imputed income of $166,000 (for November 27, 2013 to December 31, 2013); $185,000 (for January 1, 2014 to December 31, 2014); and $210,000 (after January 1, 2015). The judge also made a 7.3% adjustment for J.S.'s special needs. The judge made no adjustment for the parties' relatively high amount of their combined incomes, the cost of health insurance and unreimbursed medical expenses, or plaintiff's parenting time.

The judgment provides that plaintiff owed defendant weekly child support of $230 from November 27, 2012, to December 31, 2013; $236 from January 1, 2014, to December 31, 2014; and $242 from January 1, 2015, to April 30, 2016. The judgment further provides that from May 1, 2016, to "at least until the conclusion of the [d]efendant's alimony obligation to the [p]laintiff, the

A-1639-16T1

[p]laintiff shall have no child support obligation to the defendant as same was applied to reduce [d]efendant's alimony obligation."

C. Defendant's Arguments Regarding Child Support

1. Amount of Defendant's Income

Defendant argues that the judge erred by failing to compute child support based on his actual income. Again, we disagree. As stated previously, there is sufficient credible evidence in the record to support the judge's findings as to the parties' incomes in the relevant periods. We therefore reject defendant's contention that the judge erred by failing to compute child support based on his actual income.

2. Adjustment Based on Level of Combined Income

Defendant contends the judge erred by failing to adjust the child support award to account for the amount of the parties' combined incomes. We agree with defendant. The Child Support Guidelines provided in pertinent part that a court "shall" adjust the child support award to account for combined yearly income in excess of $187,200. Child Support Guidelines, Pressler & Verniero, Current N.J. Court Rules, Appendix IX-A to R. 5:6A, ¶ 20(b), www.gannlaw.com (2019).

Here, the record shows that the parties' combined annual income was: $591,000 (November 27, 2012, to December 31, 2013); $610,000 (January 1, 2014, to December 31, 2014); and $635,000 (after January 1, 2015). Because those amounts exceeded $187,200, the court erred by failing to make an appropriate adjustment of the child support award, as required by the guidelines.

### 3. Adjustment for Health Insurance and Medical Expenses

Defendant further argues that the judge erred by failing to make an adjustment for the children's health insurance and unreimbursed medical expenses. We disagree. In his decision of May 5, 2016, the judge noted that defendant had not presented evidence establishing those expenses. In his March 2015 CIS, defendant stated that he spent $1345 per month on health insurance and $600 on prescription drugs. Defendant failed, however, to present evidence showing the amount of those reported expenses that was attributed to the children. Therefore, the judge did not err by failing to make this adjustment.

### 4. Adjustment for J.S.'s Special Needs

Defendant contends the judge erred because he did not make an adjustment to account for J.S.'s special needs. The record does not support this contention. The child support worksheets show that the court added 7.3% to the award to account for J.S.'s special needs.

D. Plaintiff's Arguments Regarding Child Support

1. Adjustment for J.S.

Plaintiff argues that the judge erroneously made the 7.3% adjustment to the child support award because J.S. was twelve years old at the time of the divorce. On the child support worksheet, the judge referred to this adjustment and wrote "12 yo adj : 7.30%." The worksheet does not, however, support plaintiff's contention that the adjustment was made due to J.S.'s age.

On the worksheet, the judge took note of J.S.'s age but did so to identify the child for whom the adjustment was made. The judge's May 5, 2016 decision makes clear that he made the adjustment because J.S. has special needs, for which additional expenses will be incurred.

2. Failure to Use Shared Parenting Worksheet

Plaintiff contends the judge erred by failing to use the shared parenting worksheet to calculate child support. Plaintiff asserts that the judge used the sole parenting worksheet based on the assumption that she only has sixty-five overnights with the children. Plaintiff claims that at the time of the final judgment in May 2016, she had 104 overnights with the children, or 28% of the overnights during the year.

25

The child support guidelines provide in pertinent part that to qualify as a shared parenting arrangement, the parent of alternative residence must have at least two overnights with the children each week, or the equivalent of 28% of the yearly overnight visits. Child Support Guidelines, Pressler & Verniero, Current N.J. Court Rules, Appendix IX-A to R. 5:6A, ¶ 14(c)(2), www.gannlaw.com (2019). As noted previously, the judge found that plaintiff was only having sixty-five overnights per year. Therefore, the judge used the sole parenting worksheet to compute child support.

The record shows that the parties agreed plaintiff could have 104 overnights per year with the children. Because the agreed-upon parenting arrangement allows plaintiff to have 104 overnights during the year, the court should have used the shared parenting worksheet to calculate child support. If there is a change of circumstances, defendant may file a motion to modify the custody arrangement. See R.K. v. F.K., 437 N.J. Super. 58, 62 (App. Div. 2014) (citations omitted). However, so long as plaintiff is entitled to at least 28% of the yearly overnight visits, child support must be calculated using the shared parenting worksheet.

Accordingly, we affirm the award of child support but remand the matter to the trial court for reconsideration of the amount to be paid. On remand, the

26

court shall make an appropriate adjustment to the award because the parties' combined annual income exceeds $187,200. Furthermore, on remand, the court shall calculate child support using the shared parenting worksheet.

IV.

The parties both raise issues with regard to equitable distribution of the marital assets. The equitable distribution award is left to the discretion of the trial court and will not be disturbed on appeal "as long as the trial court could reasonably have reached its result from the evidence presented, and the award is not distorted by legal or factual mistake." La Sala v. La Sala, 335 N.J. Super. 1, 6 (App. Div. 2000) (citing Perkins v. Perkins, 159 N.J. Super. 243, 247-48 (App. Div. 1978)).

A. Defendant's Arguments on Equitable Distribution

Defendant argues that the judge did not address certain credits that he requested during his trial testimony. On appeal, defendant has not listed all of the credits, cite the testimony where he requested the credits, or explain the basis for the requests. He only cites, "[b]y way of example," following four requests for credits: (1) $18,105 for pay that plaintiff received from Censeo Health; (2) $20,000 that plaintiff received as an advance against equitable distribution; (3)

27

$24,434 that he paid in 2011 income taxes; and (4) $6485.34 to reimburse him for a payment in 2013 of a retirement account loan.

It appears that in his testimony, defendant made thirty-six requests for credits, which we assume are the credits he is referring to on appeal. The judge did not specifically address these requests in his decision or the judgment. We note, however, that the December 2, 2016 order denying defendant's motion for a new trial and other relief, states that defendant's request for reimbursement "for any and all credits due and owing to him, which were testified to at trial" is denied. The order referred to reasons set forth on the record; however, on the record, the judge did not expressly address these credits. We remand for a decision on each credit.

B. Plaintiff's Arguments on Equitable Distribution

1. Equity in the Marital Residence

Plaintiff argues the judge should have decided that defendant is solely responsible for the decreased equity in the marital residence, which occurred after the complaint was filed. She therefore contends the judge erred by distributing the equity in the home as of the date the trial concluded. She maintains the equity should have been distributed as of the date the complaint was filed.

 A-1639-16T1

We note that "[t]here is no absolutely ironclad rule for determining [a] date of evaluation of assets, but use of [a] consistent date is preferable, such as the filing of the complaint, . . . or perhaps the time of the hearing, depending on the nature of the asset and any compelling equitable considerations." Goldman v. Goldman, 248 N.J. Super. 10, 15 (Ch. Div. 1991) (first and fourth alterations in original) (quoting Bednar v. Bednar, 193 N.J. Super. 330, 332 (App. Div. 1984)). Absent "extraordinary circumstances," the date of the filing of the complaint should ordinarily be the date used for valuing marital property. Bednar, 193 N.J. Super. at 332.

Here, the judge ordered defendant to pay plaintiff half of the equity in the marital residence as of January 31, 2016, which was when the evidence portion of the trial was concluded. The record shows, however, that the equity in the home decreased while this action was pending because defendant failed to pay the mortgage, even though he was capable of making those payments.

As the judge noted in his May 5, 2016 decision, during this time, defendant paid his credit card bills, which reflected spending at a level he spent before the parties separated. He also paid his girlfriend $42,000 a year, along with a stipend for her car.

A-1639-16T1

We therefore conclude the judge erred by distributing the equity in the home as of January 31, 2016. That decision was not supported by sufficient credible evidence in the record and was a mistaken exercise of discretion. The judge should have ordered distribution of the equity in the home as of the date plaintiff filed her complaint.

2. HELOC

Plaintiff argues that in distributing the amount due on the HELOC, the judge erred by failing to use the balance due as of October 16, 2012, because a bank statement showed that thereafter, defendant borrowed $44,076 on the HELOC. Plaintiff asserts that she received no benefit from these withdrawals, or any of the other withdrawals defendant made from the HELOC after October 16, 2012. She therefore argues that the judge should have required her to pay only one-half of the HELOC balance due as of October 16, 2012. We disagree.

Here, the judge found that defendant used the HELOC to cover certain "shortfalls" and support his practice. The judge found that plaintiff should be responsible for a share of the withdrawals because she benefited from the withdrawals just as defendant did. We are convinced there is sufficient credible evidence in the record to support that determination. Plaintiff ultimately benefited from the withdrawals because she received a share of the value of

defendant's practice. Therefore, the judge's decision on the HELOC was not a mistaken exercise of discretion.

    3. Facebook Stock

Plaintiff challenges the judge's decision regarding the distribution of the parties' Facebook stock. The judge accepted defendant's testimony that he transferred the stock to his father to repay monies he had borrowed from his father. The judge ordered defendant to pay plaintiff half of the value of the Facebook stock "as of the date of transfer."

On appeal, plaintiff asserts that she never consented to the transfer. She also contends defendant failed to present any evidence of a loan or that he had, in fact, transferred the stock to his father. Because the stock was a passive asset that fluctuated in value based on market conditions, plaintiff contends that the judge should have awarded her half of the stock, rather than half of the value of the stock, as of September 2012. Again, we disagree.

As noted, the judge accepted defendant's testimony that he transferred the stock to his father to repay monies his father loaned to him. We defer to the judge's credibility finding because the judge heard the testimony and "ha[d] a better perspective" than we do in evaluating the veracity of the testimony. See Cesare, 154 N.J. at 412 (quoting Pascale v. Pascale, 113 N.J. 20, 33 (1988)).

We also note that at trial, plaintiff presented no evidence that contradicted defendant's testimony. Moreover, because defendant no longer owned the stock, the court could not order the transfer of half of the shares to plaintiff. We conclude the court's decision regarding the Facebook stock was supported by the record and was not a mistaken exercise of discretion.

4. Decisions Omitted from Judgment

Plaintiff asserts that the judge failed to memorialize in the judgment certain decisions that he placed on the record on May 5, 2016.

(a) Medical Expenses and Credit Card Debt

Plaintiff argues that the judge erred by failing to order defendant to pay her $18,292.44 for medical and therapy expenses, and her credit card debt. In his May 5, 2016 decision, the judge commented that he was considering giving plaintiff a credit of $18,292.44, based on an order entered in July 2014, which required defendant to pay these expenses.

The $18,292.44 award in the July 2014 order included the following amounts: plaintiff's credit card bill of $14,406.06; her $1487.02 bill for unreimbursed medical expenses; and her $2399.36 "unreimbursed medical bills and therapy bills." The judge stated, however, that he was going to "look at that and then see how that works its way into the order."

32

The judgment makes no mention of the $18,292.44 amount. The judgment states, however, that defendant must satisfy all balances owed to plaintiff's psychiatrist and psychologist. In the judgment, the judge may have been referring to the unreimbursed medical bills and therapy expenses of $2399.36 that are included in the $18,292.44. We remand the matter to the trial court to reconsider and clarify its decision on these issues.

(b) Expert Fees

Plaintiff argues that the judge failed to memorialize his decision that the funds remaining in the Mass Mutual 401k retirement account should be used to pay outstanding expert fees, with defendant responsible for 69% of those fees and plaintiff responsible for the remaining 31%.

In his decision of May 5, 2016, the judge stated that the funds in this account would be used to pay outstanding expert fees. In discussing the fee for forensic accountant Shelley Brown, the judge said that based on the parties' incomes, he would allocate responsibility for Brown's fee, with defendant required to pay 69%, and plaintiff required to pay 31%. The judgment, however, states only that the Mass Mutual account shall be liquidated and the funds "used to pay outstanding fees."

33                                                                                                    A-1639-16T1

It is not clear from the judge's decision whether he intended to allocate responsibility for all of the outstanding expert fees on a 69%/31% basis, or whether that allocation applied only to Brown's fee. We remand the matter to the trial court to clarify its decision on the use of the monies in the Mass Mutual account.

(c) Plaintiff's Personal Property

In his oral decision of May 5, 2016, the judge stated that he did not understand why the parties had not been able to resolve the matter of the return of plaintiff's personal property. It seems that plaintiff had submitted a list of about 130 items of property that she wanted returned to her.

The judge stated that he was "not going to issue an order relating" to the items on the list. The judge commented, however, that if any item of property belonged to plaintiff, she should be able to reclaim it. The judge stated, however, that plaintiff had provided "insufficient testimony at trial" regarding the items she claimed.

On appeal, plaintiff argues that the judge should have addressed this issue in the judgment. We note that on January 31, 2018, the trial court entered a post-judgment order, which directed defendant to return plaintiff's personal property. Therefore, the issue may be moot.

If not, on remand, the court shall order plaintiff to identify with specificity any property that has not been returned. If there is a dispute as to the ownership of any item, the court shall resolve the dispute. Thereafter, the court shall enter an order setting forth the manner and time in which defendant should deliver, or allow plaintiff to retrieve, her personal property.

(d) Student Loans

Plaintiff contends the judge erred by failing to include in the final judgment a provision stating that the parties are responsible for respective student loans. We disagree. There is nothing in the record suggesting that either party sought to require the other party to assume responsibility for any student loan debt. Therefore, the court had no reason to address this issue in the judgment.

(e) Issues not Decided

Plaintiff contends that the judge did not decide three issues she raised at trial. We address each in turn.

(i) $5000 Credit for Pendente Lite Support Paid from the Litigation Fund

Plaintiff asserts that an order dated March 18, 2014, required defendant's attorney to pay her $10,000 in pendente lite support with monies drawn from a fund established by the parties to fund the litigation. Because the litigation fund

was marital property, plaintiff argues that the trial court should have given her a $5000 credit for the payment made to her with monies from the fund. The judge did not address this request in the judgment or the order on the post-judgment motions. On remand, the court shall make a decision on this request.

(ii) <u>Unreimbursed Medical and Prescription Expenses</u>

Plaintiff argues that the judge failed to decide whether defendant was required to pay certain unreimbursed medical and prescription expenses for herself and the children that were incurred during the litigation. She asserts that in an order dated February 13, 2013, the court ordered defendant to pay these expenses. Plaintiff contends defendant did not fully comply with that order.

We note that in the May 5, 2016 decision, the judge stated that he was going to reaffirm all prior orders, except for the orders that imposed sanctions on defendant. The final judgment does not, however, mention plaintiff's unreimbursed medical expenses, other than those incurred for her psychiatric and psychological treatment.

Therefore, it is unclear whether the court intended to require defendant to pay the other medical and prescription expenses that plaintiff incurred, and medical and prescription expenses incurred for the children. On remand, the court shall clarify its decision on these expenses.

(iii)  <u>UBS Retirement Account Funds Used to Pay Support and Expert Fees</u>

Plaintiff contends the judge did not decide whether she was entitled to a credit for the monies in the UBS retirement account that were used to pay $26,991.88 for expert fees and $5000 for pendente lite support.

Based on the court's allocation of the costs of certain expert fees (69% to defendant and 31% to plaintiff), plaintiff claims she is entitled to a $5128.46 credit for the $26,991.88 paid to the experts.  She also claims she is entitled to a $2500 credit for the $5000 pendente lite support payment she received because one-half of the monies in UBS account belonged to her.  The court did not address these issues in the judgment or in the order denying the post-judgment motions.

As we stated previously, the court's decision on the allocation of the expert fees requires clarification.  In addition, the court shall make a decision on plaintiff's request for the $5000 credit for the pendente lite support payment made from the UBS account.

V.

Both parties challenge the trial court's award of attorney's fees.  We review the court awarding attorney's fees under an abuse of discretion standard.  <u>Tannen</u>

v. Tannen, 416 N.J. Super. 258, 285 (App. Div. 2010) (citing Chestone v. Chestone, 322 N.J. Super. 250, 258 (App. Div. 1999).

A. Standards for the Award of Counsel Fees

A trial court may award reasonable attorney's fees in actions in the Family Part. N.J.S.A. 2A:34-23; R. 5:3-5(c). When deciding if attorney's fees should be awarded, "the court must look at the requesting party's need, the other party's ability to pay and the good and bad faith of each party." Heinl, 287 N.J. Super. at 349. Rule 5:3-5(c) also provides that:

> the court should consider, in addition to the information required to be submitted pursuant to R[ule] 4:42-9, the following factors: (1) the financial circumstances of the parties; (2) the ability of the parties to pay their own fees or to contribute to the fees of the other party; (3) the reasonableness and good faith of the positions advanced by the parties both during and prior to trial; (4) the extent of the fees incurred by both parties; (5) any fees previously awarded; (6) the amount of fees previously paid to counsel by each party; (7) the results obtained; (8) the degree to which fees were incurred to enforce existing orders or to compel discovery; and (9) any other factor bearing on the fairness of an award.

Rule 4:42-9(b) states that an application for counsel fees must "be supported by an affidavit of services addressing the factors enumerated by RPC 1.5(a)." These factors relate to (1) "the time and labor required"; (2) whether the case will "preclude other employment" for the attorney; (3) "the fee

38

customarily charged"; (4) "the amount involved and the results obtained"; (5) any time limitations; (6) "the nature and length of the relationship with the client"; (7) "the experience, reputation, and ability of the lawyer or lawyers performing the services"; and (8) "whether the fee is fixed or contingent." RPC 1.5(a).

B. The Judge's Decision on Attorney's Fees

In his May 5, 2016 decision, the judge found that "the fees in this case were exorbitant for the issues that were involved" and were "grossly disproportionate to what would have been necessary" for this "basic divorce case." The judge commented that "there is no doubt that both parties spent way too much on legal fees, given the relatively narrow issues," and that plaintiff's fees were "somewhat higher than they should have been. I think significantly higher than they should have been, in light of the intransigence and evasiveness of the defendant."

With respect to the skill required to try the case, the judge noted that every matrimonial case required "a lot of skill" to "balance motions, facts, and the law." The judge stated that the attorneys in this case were "[t]wo excellent attorneys with good backgrounds." The case did not preclude either of them

from other employment, and the fees they charged were reasonable. The judge attributed the "over-lawyer[ing]" in this case to the parties, not the attorneys.

Regarding the financial circumstances of the parties, the judge noted that plaintiff "clearly had the capacity to work and earn substantial income, yet chose not to." The judge also found that "a great many of [plaintiff's] applications were engendered by a need for support, which was caused at least in part by her own inexplicable refusal to work."

The judge pointed out that both parties had financial difficulties, but found defendant was in a better position to pay the attorney's fees than plaintiff. The judge added, however, that he was concerned about defendant's ability to pay a significant amount of fees. The judge noted that both parties had taken "difficult" positions during the litigation. The judge observed that the court had awarded counsel fees during the litigation, but the judge did not comment on them. The judge found that the results of the proceeding were "mixed," and neither party had obtained the result they wanted.

In addition, the judge found that both parties had acted improperly at times during the litigation. He noted that plaintiff had filed twenty applications to enforce orders, along with some "unnecessary" orders to show cause. The judge

also noted that defendant violated many of the court's orders, and "played fast and loose with providing documents, responding to subpoenas and the like."

The judge stated that while defendant may have a point in being concerned about paying plaintiff support while she was not working, it was not appropriate for defendant to "resort to self-help." The judge commented that defendant did not pay plaintiff's pendente lite support even though he was spending at a level he enjoyed before the parties separated, and paying his girlfriend a yearly salary and money for her car.

The judge decided that plaintiff was entitled to an award of attorney's fees. In addressing the amount of the award, the judge stated that plaintiff's outstanding legal fees totaled $239,306.39. The judge applied a thirty-one percent "multiplier" to reduce the fees by $74,185.

After subtracting that amount from the outstanding fees, the judge stated that the remaining balance was $145,977. The judge further reduced that amount by one-third, explaining that he thought it was appropriate to make that reduction. The judge stated that the resulting fees totaled $97,804.52.[2]

---

[2] We note that the judge's calculations of the fee award are incorrect. The judge started with the statement that the total of the outstanding fees was $239,306.39. The judge then reduced that amount by 31% or $74,185, resulting in a balance of $145,977. However, the correct amount was $165,121.39, not $145,977.

The judge then noted that defendant had overpaid pendente lite support by $73,058.34, and thus had a credit for that amount. After subtracting the $73,058.34 credit from the reduced attorney's fees of $97,804.52, the court stated that defendant would owe plaintiff $24,746.22. The judge stated, however, that he was still working through the fee award and that he might just "net it out" and decide that plaintiff's fee award was equivalent to defendant's credit.

The judgment "netted out" the fee award, since it awarded plaintiff counsel fees equivalent to defendant's $73,058.34 credit. The order provides the following explanation:

> For the reasons stated on the record, the [c]ourt finds that a counsel fee award in favor of [p]laintiff and against [d]efendant is appropriate. The [c]ourt estimates that close to $600,000.00 in legal fees and costs was either incurred by or charged to the parties. This exorbitant amount was largely the result of the intransigence of both parties throughout the litigation, but [more so] on the part of the [d]efendant. As a result, the [c]ourt feels the <u>Mallamo</u> credit of $73,058.34 closely approximates the amount of fees incurred which were primarily the result of the [d]efendant's failure to [follow] basic [c]ourt [o[rders and directives. It is noted that while the parties submitted the gross amount of legal bills, no attempt was made to segregate and/or classify those bills in terms of fees or costs incurred due

---

Applying the 33% reduction to that amount or $54,490.06, the judge's decision should have resulted in a fee of $110,712.35, not $97,804.52.

to the wrongful conduct of one party or the other. The $73,058.34 credit shall be extinguished as satisfaction for the legal fees owed by the [d]efendant to the [p]laintiff.

On appeal, defendant contends that the judge erred by awarding plaintiff attorney's fees based on a finding that he had acted in bad faith. He asserts that the record does not support a finding that he willfully failed to pay pendente lite support. He claims plaintiff would not have needed support if she had acted in good faith to find work. He asserts that had she done so, the parties could have negotiated in good faith to settle the case.

We are convinced, however, that there is sufficient credible evidence in the record to support the judge's finding that defendant acted in bad faith during the litigation by failing to comply with various court orders, including orders requiring payment of pendente lite support, plaintiff's unreimbursed medical expenses, her credit card debt, as well as expenses associated with the marital home.

In challenging the award, plaintiff argues that the judge failed to calculate the fee award based on the total fees incurred throughout the litigation, and failed to explain the basis for reducing the fee first by thirty-one percent and then by thirty-three percent before ultimately concluding that the fee award was equivalent to defendant's credit for overpayment of pendente lite support.

We are convinced the award must be set aside and reconsidered on remand. Here, the judge started his analysis with the outstanding fees, rather than the total of all fees incurred in the litigation, which is required by Rule 5:3-5(a). The judge should explain his reasons for doing so. We note that defendant was awarded fees earlier in the case, although it is not clear whether those fees were paid.

Moreover, the judge did not provide sufficient reasons for reducing the fee award three times: first, by thirty-one percent; second, by thirty-three percent; and third, by some amount that "netted out" defendant's credit for overpayment of pendente lite support. Furthermore, to the extent the reductions were in part based on the court's finding that plaintiff made numerous unnecessary motions to enforce the court's orders, the record does not support that finding.

As noted, defendant failed to comply with the court's orders requiring certain payments, and the court granted plaintiff's motions to enforce the orders. Although plaintiff could have been working, this does not alter the fact that the court had issued orders requiring defendant to make the payments, and he failed to comply. Under the circumstances, plaintiff justifiably sought relief from the

A-1639-16T1

court.  Therefore, the record does not support the judge's finding that plaintiff made motions that were unnecessary or lacking merit.

Accordingly, we reverse the trial court's award of attorney's fees, and remand the matter for reconsideration of the award.  The court shall explain why it began the analysis with the outstanding fees that plaintiff incurred in this case, rather than the total amount of the attorney's fees incurred throughout the litigation.

If the court again elects to reduce that amount, the court shall fully explain the basis for any such reductions.  The court shall not, however, reduce the fees based on finding that plaintiff incurred attorney's fees to make unnecessary motions to enforce the court's orders.

On these and all other issues to be addressed on remand, the trial court shall make appropriate findings of fact and conclusions of law, as required by Rule 1:7-4(a).

On the appeal and cross-appeal, we affirm in part, reverse in part, and remand the matter for further proceedings in conformity with this opinion.  We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-1639-16T1