**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-4643-19

GUSTAVO DOMINGUEZ,

    Plaintiff-Appellant/
    Cross-Respondent,

v.

ADRIANA DOMINGUEZ,

    Defendant-Respondent/
    Cross-Appellant.

_____

Submitted December 6, 2021 – Decided June 27, 2022

Before Judges Fasciale and Vernoia.

On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Somerset County, Docket No. FM-18-0367-00.

Law Offices of Morgan L. Rice, LLC, attorneys for appellant/cross-respondent (Morgan Rice and Jef Henninger, on the briefs).

Seiden Family Law, LLC, attorneys for respondent/cross-appellant (Sheryl J. Seiden and Christine C. Fitzgerald, on the briefs).

PER CURIAM

In this post-judgment matrimonial matter, plaintiff Gustavo Dominguez appeals from those portions of a July 18, 2020 Family Part order denying his motion to terminate, modify, or suspend his $7,500 monthly alimony obligation to defendant Adriana Dominguez, and directing that he pay defendant a $167,536 retroactive cost-of-living adjustment for his alimony and child support obligation. Defendant cross-appeals from that portion of the same order denying her application for attorney's fees and costs. Based on our review of the motion record, the parties' arguments, and the applicable legal principles, we affirm in part, vacate in part, and remand for further proceedings.

I.

The parties married in 1985, had five children, separated in 1994, and divorced in 1999. The final judgment of divorce incorporated the parties' Property Settlement and Support Agreement (PSSA) that provides plaintiff would pay $446,000 in annual child support and alimony in the years following 2000. The PSSA further provides the annual child support and alimony payment would include "a cost of living adjustment equal to one half of the annual increase in the consumer price index as published by the U[.] S[.] Department of Labor for the New York Metropolitan Area." The PSSA includes a cap on the annual cost of living adjustment, stating the adjustment "shall not exceed the

increase in [plaintiff's] annual compensation." The parties agreed the alimony and support payments "shall be net of taxes."

The PSSA also includes a provision allowing an adjustment of the child support and alimony obligation in the event of plaintiff's retirement. The PSSA provides that if plaintiff retired and obtained similar employment for substantially less income, obtained different employment for substantially less income, or was not reemployed, alimony would "end and child support" would be paid pursuant to another provision of the PSSA. In the event plaintiff retired and obtained similar or different employment "for similar income," his alimony and child support obligations were to continue in the amounts pursuant to the post-2000 requirements of the PSSA.

In 2004, the parties agreed to an amendment (the 2004 amendment) to the PSSA modifying plaintiff's alimony and child support obligation. Under the 2004 amendment, plaintiff's alimony and child support obligation was to be determined annually based on the amount of his annual pay and year-end bonus. The amendment lists seven separate minimum annual base pay and year-end bonus totals and, for each, a corresponding designated annual child support and alimony obligation. For example, at the high end, the amendment provides plaintiff's annual alimony and child support obligation is $475,768 if his base

A-4643-19

pay and bonus exceeds $4,000,000, and, at the low end, his alimony and child support obligation is $260,019 if his base pay and bonus is less than $1,000,000. The 2004 amendment further provides the stated alimony and child support amounts "shall be adjusted every year by one half the [consumer price index] as set forth in" the PSSA.

In 2005, plaintiff's employment was terminated, but he told defendant he retired and would thereafter pay only child support. Four months later, in June 2005, plaintiff became employed by a privately held investment fund, Gottex, and he received a one percent interest in the company in 2005 and an additional one percent interest in 2006 as part of his compensation. His employment with Gottex terminated in December 2009, but he continued to receive a salary until March 2010 as severance. Shortly thereafter, plaintiff obtained employment with Ad Capital, where he remained employed at all times pertinent to this appeal.

In 2006, plaintiff established the Dominguez Family Limited Partnership (DFLP), and he gifted his two percent interest in Gottex to DFLP. Plaintiff owned one percent of DFLP as general partner, nineteen percent as a limited partner, and the remaining eighty percent was held by the Dominguez 2006 Irrevocable Trust (the trust), which plaintiff established for the benefit of the

A-4643-19

parties' children.  In 2007, DFLP realized capital gains of $11,409,024 on its two percent share of Gottex.

In November 2013, the parties entered into another amendment to the PSSA.[1]  The amendment modified plaintiff's child support obligation, provided for the termination of child support based on the anticipated emancipations of the parties' children, and required that plaintiff provide defendant with updates concerning DFLP.

Concerned about issues related to the trust and plaintiff's refusal to permit her to use the trust's funds for the children, defendant retained a forensic accountant and discovered in 2017 plaintiff did not retire in 2005, but instead had remained consistently employed throughout the years after a very short break in his employment in 2005.  Defendant subsequently filed a motion for relief in aid of litigant's rights seeking enforcement of plaintiff's obligations under the PSSA and the 2004 amendment, reinstatement of alimony, and payment of alimony and child support arrears for the years 2005 through 2017. The court allowed the parties to exchange discovery and then conducted a ten-day plenary hearing that concluded in April 2019.

---

[1]  In May 2013, the parties also agreed to an amendment to the PSSA providing for the transfer of ownership of a cemetery plot to defendant.

In a comprehensive written decision following the hearing, the court summarized the evidence presented and, in pertinent part, determined that under the PSSA and the 2004 amendment, plaintiff agreed to pay defendant alimony until he fully retired. The court found plaintiff breached the PSSA and the 2004 amendment when he stopped paying alimony in 2005 after he lost his job but months later "found a new job that paid him millions of dollars" and "never informed [defendant] that he was working again." The court found plaintiff first told defendant "he was working once again . . . eight years after he began working full time for Gottex." The court rejected as incredible plaintiff's testimony he worked only part-time for Gottex, noting his employment contract required that he work full time; he was guaranteed $1,000,000 per year in compensation; he relinquished a salary guarantee for two percent ownership in the company; and he made "about" $13,000,000 when Gottex went public.

The court interpreted the parties' PSSA and the 2004 amendment to require that plaintiff pay alimony in an amount based on his annual compensation from his employment. The court rejected defendant's claim the calculation of plaintiff's annual compensation "should include as income distributions to the plaintiff from assets previously acquired through plaintiff's annual compensation," including plaintiff's real estate and other investments.

A-4643-19

The court concluded inclusion of such income "is clearly double counting and is not consistent with the parties' agreements."

The court also found plaintiff's "Total Adjusted Gross Cash Flow" for each year during the period 2005 through 2017, although "greater than plaintiff's earnings," would "not be used to calculate support." The court found the cash flow would instead be considered in determining "plaintiff's ability to pay alimony" in accordance with "N.J.S.A. 2A:34-23(b)." Similarly, the court concluded plaintiff's receipt of distributions from DFLP could not be properly considered as income for purposes of determining his alimony and child support obligation under the 2004 amendment to the PSSA, but the court determined distributions from DFLP would be considered in determining plaintiff's ability to pay alimony and child support.

The court calculated plaintiff's annual compensation for the years 2005 through 2017 for use in determining his alimony and support arrears for those years under the PSSA and the 2004 amendment. The court: applied the parties' agreed upon formula for calculating the annual alimony and child support for each year; allocated portions of the total amounts to child support and alimony; adjusted the child support obligation for the emancipations of the children; credited plaintiff for his child support payments; and determined the amount due

A-4643-19

defendant for unpaid alimony for the years 2005 through 2017. The court concluded plaintiff owed defendant $1,008,520 for unpaid alimony "for the period of January 1, 2005[,] through December 31, 2017."

The court further explained that its determination of the amount plaintiff owed defendant for unpaid alimony through December 31, 2017 did not include the sum due under the PSSA and the 2004 amendment for the required annual consumer price index adjustment. The court ruled that if defendant sought to enforce the consumer price index adjustment provision, she should calculate the amount she claimed due and submit it to plaintiff. The court further determined that if the parties could not agree on the amount due, defendant should file a motion to enforce the consumer price index adjustment provisions of the PSSA and the 2004 amendment.

The court separately analyzed and determined what it characterized as "alimony going forward"—that is, plaintiff's alimony obligation beginning on January 1, 2018. In its determination of alimony, the court considered and made findings under the factors set forth in N.J.S.A. 2A:34-23(b). Pertinent here, the court considered the actual need and ability of the parties to pay, finding that in 2015 plaintiff "certified to a bank his net worth was over $15 million"; in plaintiff's May 25, 2018 case information statement, plaintiff "listed his 2017

income at $865,040 and stated his current marital lifestyle is $49,062 per month"; and "[h]e listed his gross assets at almost $7 million and his liabilities at $2.5 million."

Based on those findings, as well as others related to the remaining factors in N.J.S.A. 2A:34-23(b), the court ordered that plaintiff pay defendant monthly alimony of $7,500. The court entered an April 26, 2019 order holding plaintiff in violation of litigant's rights for violating his obligation to pay alimony under the PSSA and the 2004 amendment, ordering that plaintiff pay $1,279,320 in alimony arrears, directing that plaintiff pay $7,500 in monthly alimony commencing on January 1, 2018, and requiring plaintiff pay $280,000 for defendant's counsel fees and costs.[2] Plaintiff appealed from the court's order but later withdrew the appeal.

Defendant subsequently moved for relief in aid of litigant's rights seeking to enforce the April 26, 2019 order. In an August 16, 2019 order, the court granted defendants motion, finding plaintiff violated various provisions of the April 26, 2019 order, and: setting retroactive alimony arrears at $7,500 per month effective January 1, 2018; directing that plaintiff pay $280,000 in counsel

---

[2] The order granted and denied various other relief requested by the parties that is not relevant to the pending appeal.

fees and costs due defendant by September 13, 2019; permitting defendant to enter a judgment against plaintiff for all sums due under the April 26, 2019 order; requiring plaintiff to respond to a document request from defendant's forensic accountants; directing that the parties exchange information and confer concerning the consumer price index adjustment; and granting defendant's motion for counsel fees and costs for the motion in aid of litigant's rights.

In May 2020, plaintiff moved to reduce, suspend, or otherwise modify his $7,500 monthly alimony obligation. He claimed to have "experienced" a "substantial change in financial circumstances . . . since the April 26, 2019 order and decision were issued." Defendant cross-moved for an order: finding plaintiff in violation of litigant's rights for his failure to pay the alimony arrears pursuant to the August 16, 2019 order; directing that plaintiff pay $279,329 for past due sums for the consumer price index adjustment to the alimony and child support obligations for the years 2005 through 2017; and awarding counsel fees and costs.[3]

In support of his motion, plaintiff explained that a substantial portion of his income over the prior decade came "from securities unrelated to his

---

[3] Defendant's cross-motion sought other relief not directly relevant to the disposition of the issues presented on appeal.

employment," and that "[b]y investing in high risk closed end funds and utilizing leverage margin, [he] had been able to generate enough in dividends to satisfy [his] obligations that [his] salary could not." Plaintiff noted, for example, his investment strategy produced net dividends of $398,908 in 2018 and $456,654 in 2019 in his brokerage accounts. He further explained the same investment strategy yielded dividends in DFLP's brokerage account of $240,822 in 2018 and $245,651 in 2019.

In his certification supporting his motion, plaintiff represented that the downturn in the investment markets in March 2020 resulted in margin calls on his brokerage account and DFLP's account that he could not satisfy and, as a result, the capital in both accounts were reduced to levels that did not yield dividends sufficient to support his personal monthly obligations and his $7,500 monthly alimony obligation.[4] He further asserted that due to the loss of capital in those accounts, the reduction in the dividend income was permanent. In sum, plaintiff claimed that because those accounts no longer had sufficient capital to yield the very large dividends he had historically obtained prior to entry of the April 26, 2019 order, and his income was therefore limited to his annual

_____

[4] Plaintiff's supporting certification details his efforts to stave off the margin calls, including contributing additional sums of cash to the accounts that he obtained by selling various assets and liquidating other accounts.

$180,000 salary from Ad Capital, there was a significant change in circumstances—his substantial loss in income—warranting relief from the ordered alimony obligation.

The court denied plaintiff's motion for a termination, reduction, or temporary suspension of his $7,500 monthly alimony obligation based on its determination plaintiff did not demonstrate a material change in circumstances warranting the requested relief. The court noted that its April 26, 2019 order was based on findings defendant needed $7,500 per month to support herself and plaintiff "had the ability to pay . . . defendant $7[,]500 per month."

In finding plaintiff failed to demonstrate a material change in circumstances, the court did not reject plaintiff's claim that due to the market downturn in March 2020, and the concomitant margin calls on plaintiff's investments, his accounts no longer yielded the significant dividends they earned when the court determined his ability to pay alimony in 2019. The court also did not reject plaintiff's representation that the more than $45,000 per month in investment income he had been earning, and which the court relied on in April 2019 to determine his ability to pay the ordered $7,500 monthly alimony, was no longer available to him.

The court found plaintiff failed to demonstrate a material change in circumstances because the loss of the dividend income was "not caused by an involuntary loss of employment or other unforeseen financial circumstances," but instead was the result of plaintiff's decision to "engage[] in highly speculative investments." The court found plaintiff's choice to "'play the market' for his own advantage" resulted in his loss of the investment income, and the loss therefore did not constitute a material change in circumstances permitting further consideration of his motion to modify, suspend, or terminate his alimony obligation.

The court granted defendant's request for sums due under the PSSA, the 2004 amendment, and the August 16, 2019 order for the consumer price index adjustment. The court rejected defendant's claim the annual percentage increases for the adjustment should be compounded and concluded "defendant . . . provided sufficient proof . . . $167,536[] is the correct amount that should be awarded for the [c]onsumer [p]rice [i]ndex adjustment." The court also noted "plaintiff complained the adjustment was not warranted in certain years," but "he does not present persuasive proof as to what the correct number should be." Based on those findings, the court awarded defendant

13

$167,536 for the consumer price index adjustment required under the PSSA and the 2004 amendment.

The court denied defendant's cross-motion for counsel fees, finding that although plaintiff was unsuccessful in his request for relief from the April 26, 2019 alimony order, his application was not made in bad faith. The court also noted that it denied relief sought in defendant's cross-motion because it had previously granted the relief requested. The court entered a memorializing order on July 18, 2020.

Plaintiff appeals from that portion of the court's July 18, 2020 order denying his request for termination, suspension, or modification of the $7,500 monthly alimony obligation and awarding defendant $167,536 for the consumer price index adjustment. Defendant cross-appeals from the denial of her cross-motion for attorney's fees.

II.

We have routinely recognized the Family Part's "special jurisdiction and expertise in family matters." Thieme v. Aucoin-Thieme, 227 N.J. 269, 282-83 (2016) (quoting Cesare v. Cesare, 154 N.J. 394, 413 (1998)). We defer to its factual findings and will not reverse a Family Part decision unless constitutes an abuse of discretion; that is, (1) its "findings are 'so manifestly unsupported by

or inconsistent with the competent, relevant and reasonably credible evidence as to offend the interests of justice[,]'" Spangenberg v. Kolakowski, 442 N.J. Super. 529, 535 (App. Div. 2015) (quoting Rova Farms Resort, Inc. v. Invs. Ins. Co. of Am., 65 N.J. 474, 484 (1974)); (2) the court failed to consider all controlling legal principles, Gotlib v. Gotlib, 399 N.J. Super. 295, 309 (App. Div. 2008); or (3) the court entered an order that lacks evidential support, Mackinnon v. Mackinnon, 191 N.J. 240, 254 (2007).

"[A]limony and support orders define only the present obligations of the former spouses," and therefore thet "are always subject to review and modification upon a showing of 'changed circumstances.'" Crews v. Crews, 164 N.J. 11, 24 (2000) (quoting Lepis v. Lepis,  83 N.J. 139, 146 (1980)); see also N.J.S.A. 2A:34-23 ("[Alimony orders] may be revised and altered by the court from time to time as circumstances may require.")  To establish an entitlement "to a hearing on whether a previously-approved support award should be modified, the party moving for the modification 'bears the burden of making a prima facie showing of changed circumstances.'" Crews, 164 N.J. at 28 (quoting Miller v. Miller, 160 N.J. 408, 420 (1999)); see also Lepis, 83 N.J. at 157 (explaining "[t]he party seeking modification has the burden of showing such 'changed circumstances' as would warrant relief from the support or maintenance

15

provisions involved").  More particularly, a party requesting "modification of an alimony award 'must demonstrate the changed circumstances have substantially impaired the ability to support himself or herself.'"  Crews, 164 N.J. at 28 (quoting Lepis, 83 N.J. at 157).

In its assessment of whether a moving party has made a prima facie showing of changed circumstances, the court must consider the terms of the order at issue and compare the facts as they were when that order was entered with the facts as they are at the time of the motion.  Faucett v. Vasquez, 411 N.J. Super. 108, 128-29 (App. Div. 2009).  The moving party "bears the burden of making a prima facie showing of changed circumstances" to initiate a modification of an alimony obligation.  Crews, 164 N.J. at 28 (quoting Miller, 160 N.J. at 420).

"There is . . . no brightline rule by which" a court measures a change in circumstances.  Larbig v. Larbig, 384 N.J. Super. 17, 23 (App. Div. 2006). "[E]ach and every motion to modify an alimony obligation 'rests upon its own particular footing and [we] must give due recognition to the wide discretion which our law rightly affords to the trial judges who deal with these matters.'" Donnelly v. Donnelly, 405 N.J. Super. 117, 127 (App. Div. 2009) (quoting Larbig, 384 N.J. Super. at 21).  If a prima facie showing of changed

circumstances is made, the court must then determine if a plenary hearing is warranted. Lepis, 83 N.J. at 159; see also Crews, 164 N.J. at 28 (noting the party seeking modification must make a prima facie showing of changed circumstances before being entitled to a hearing).

Plaintiff does not dispute it is his obligation to first demonstrate a change in circumstances as a condition precedent to the court's determination of whether there is a need for plenary hearing. See Landau v. Landau, 461 N.J. Super. 107, 117-18 (explaining the 2014 amendments to N.J.S.A. 2A:34-23 do not "evince[] any intention to alter the Lepis changed circumstances paradigm"). He instead claims the court erred by finding he did not demonstrate a material change in circumstances based on its determination the substantial change in his investment income was the result of his failure to take a "prudent course of investment to insure . . . he could continue to pay his court ordered financial obligation," and his decision to invest in what the court characterized as "highly speculative investments." The court found granting the relief sought by plaintiff would unfairly visit upon defendant the losses plaintiff suffered because his "risky [investment] strategy failed."

Plaintiff's motion for relief from the monthly $7,500 alimony obligation is founded on a simple contention. He notes the court utilized the approximately

$45,000 per month in investment income he received from his brokerage account and his share of DFLP's investment account in its determination of his ability to pay alimony when it established the $7,500 monthly obligation in the April 26, 2019 order. He argues the undisputed loss of the capital that generated those dividends in March 2020 thereby constitutes a material change in circumstances—a substantial loss in the income used to determine his ability to pay alimony—warranting relief from the monthly $7,500 obligation.

In our view, the court erred by rejecting plaintiff's claimed material change in circumstances based solely on its determination the loss of his substantial monthly dividend income was the result of highly speculative investments and a risky investment strategy. In the first instance, we cannot defer to the court's finding plaintiff's investments were "highly speculative" because the court did not cite to any evidence supporting the finding, plaintiff asserts the decrease in the value of the investments is attributable to a downturn in the markets due to the unprecedented COVID-19 pandemic, and we will not assume the investments were highly speculative simply because the capital value of the accounts plummeted during a downturn in the markets. We do not suggest the court's finding is erroneous as a matter of fact or that a supporting spouse's choices are not relevant to a determination of a modification motions. See, e.g.,

Miller, 160 N.J. at 420-21 (explaining "[r]eal property, capital assets, investment portfolio, and capacity to earn by 'diligent attention to . . . business' are all appropriate factors for a court to consider in the determination of alimony modification" (quoting Innes v. Innes, 117 N.J. 496, 503 (1990))). We note only the court did not cite to any evidence supporting its finding the investments were highly speculative, and the record presented on appeal does not support a finding plaintiff's failed investment strategy was the product of misconduct or lack of diligence.

Additionally, in denying plaintiff's motion, the court did not compare plaintiff's complex financial circumstances supporting the April 26, 2019 order setting plaintiff's monthly alimony obligation at $7,500 with the equally complex but clearly different circumstances presented in his May 2020 motion for relief from his alimony obligation. See Beck v. Beck, 239 N.J. Super. 183, 190 (App. Div. 1990) ("[T]he changed-circumstances determination must be made by comparing the parties' financial circumstances at the time the motion for relief is made with the circumstances which formed the basis for the last order fixing support obligations."). A comparison of those separate circumstances is essential to a proper determination of whether plaintiff made the requisite showing of a material change in circumstances necessary for the

19

court to then consider whether a plenary hearing on the motion is required. See ibid.

In that regard, in analyzing plaintiff's ability to pay alimony as part of its determination of alimony in 2019, the court expressly relied on plaintiff's 2017 income of $865,010, which consisted of a $180,000 salary from his employment at Ad Capital and $705,040 in unearned income from his investments. In his 2020 modification motion application, plaintiff certified that due to the losses suffered in the downturn in the markets in March 2020, he is no longer able to generate any unearned income from his and DFLP's investment accounts, and his cash flow and income is limited to his $180,000 salary.

In our view, plaintiff's alleged loss of the substantial investment income in 2020—which he represents is permanent because he also lost the capital that previously generated the income—sufficiently suggests a material change in circumstances such that the court was required to engage in the comparison of the financial circumstances extant when the April 26, 2019 order was entered and those extant when the May 2020 modification motion was made. That comparison is essential to a determination of whether plaintiff made a sufficient demonstration of a material change in circumstances such that the court should

A-4643-19

consider whether a plenary hearing is required. Faucett, 411 N.J. Super. at 128-29.

That is not to suggest plaintiff is entitled to a modification of his alimony obligation or a plenary hearing. Plaintiff's financial circumstances are quite complex and require close scrutiny, especially in light of his historical failure to pay alimony for many years by mispresenting he had retired. We also do not suggest there is merit to plaintiff's claim he is entitled to a modification to his alimony obligation or that he cannot afford to pay the alimony established in the court's April 26, 2019 order. We also have not determined plaintiff established a material change in his complex financial circumstances warranting a modification in alimony, even with his claimed loss in investment income, and nothing in this opinion shall be interpreted as expressing a view on that issue. We determine only the court must address and decide in the first instance whether plaintiff demonstrated a material change in circumstances by comparing the financial circumstances supporting the April 26, 2019 alimony order and those extant when the modification motion was filed in 2020 to determine if the changes upon which plaintiff relies are sufficiently material to warrant a further determination whether a plenary hearing is required.

We therefore vacate that portion of the court's order denying plaintiff's motion to terminate, modify, or suspend his alimony obligation and remand for the court to conduct the requisite comparison of the financial circumstances extant when the April 26, 2019 alimony order was entered and when the May 2020 modification motion was filed, and determine whether plaintiff demonstrated a material change in circumstances warranting further consideration of his modification motion. The remand court shall consider any additional submissions and arguments from the parties it deems appropriate and conduct such proceedings it deems necessary to address and decide plaintiff's modification motion.[5]

Plaintiff also challenges the court's award of $167,536 to defendant for the required consumer price index adjustment to plaintiff's alimony and child support obligation under the PSSA and the 2004 amendment. Plaintiff does not dispute his obligation to pay the adjustment; he argues the court erred by

---

[5] In the event the court determines plaintiff has demonstrated a material change in circumstances warranting consideration on the merits of his motion to modify the April 26, 2019 order establishing his current alimony obligation, the court shall consider the factors in N.J.S.A. 2A:34-23(k). See Landau, 461 N.J. Super. at 116-18 (explaining the 2014 amendments to N.J.S.A. 2A:34-23 do not relieve a party seeking a modification of an alimony order from first demonstrating a material change in circumstances under the Lepis standard).

accepting defendant's calculation of the adjustment. Defendant asserts the court correctly accepted the calculation of the adjustment set forth in her forensic accounting firm's September 12, 2019 memorandum explaining its determination of the $167,536 adjustment.[6]

On appeal, plaintiff reprises his argument defendant's calculation of the adjustment is not in accord with the requirements of the PSSA and the 2004 amendment. He argues the PSSA and the 2004 amendment provide for consumer price index adjustments to plaintiff's child support and alimony obligation at a rate of one-half the increase in the consumer price index, but the adjustment "shall not exceed the increase in [plaintiff's] annual compensation." He claims defendant's calculation erroneously provides for adjustments in years his income decreased. He asserts here, as he did before the trial court, the cumulative consumer price index adjustment through the end of 2017 should be $12,914, and not the $167,536 awarded by the court. Plaintiff also claims

---

[6] The September 12, 2019 memorandum included two calculations of the consumer price index adjustment. In one calculation, the adjustment was determined based on a compounding of interest and, in the other calculation, simple interest was used. The motion court accepted plaintiff's argument neither the PSSA nor the 2004 amendment permit the compounding of interest, and held defendant is not entitled to the adjustment based on a compounding of interest. Defendant does not appeal from that determination. Thus, the parties agree the consumer price index adjustment required under the PSSA and 2004 amendment shall not be based on compounded interest.

A-4643-19

defendant's calculation of the adjustment, which the court accepted, was in error because it included current year adjustments based on consumer price indices for only one-half of the prior calendar year.

Our review of this issue is hampered by the lack of any findings of fact or conclusions of law supporting the court's acceptance of the defendant's forensic accounting firm's memorandum's calculation of the consumer price index adjustment. See generally R. 1:7-4 (requiring a trial court to make findings of fact and conclusions of law "on every motion decided by a written order that is appealable as of right"). It also appears the only putative evidence presented to the trial court concerning the calculation of the adjustment was defendant's forensic accounting firm's September 12, 2019 memorandum and plaintiff's counsel's September 20, 2019 letter disputing the calculation and offering argument and calculations supporting plaintiff's position. The memorandum and letter reveal conflicting methods of calculating the adjustment based on different numbers and differing interpretations of the PSSA and the 2004 amendment. The court resolved the conflicting positions taken by the parties by concluding defendant "provided sufficient proof" her calculation "is the correct amount," and plaintiff did "not present persuasive proof as to what the correct number should be."

In our view, the court's conclusory acceptance of defendant's proposed calculation does not adequately address the issues raised by the parties related to adjustment. See Elrom v. Elrom, 439 N.J. Super. 424, 443 (App. Div. 2015) (explaining the absence of the findings required under Rule 1:7-4 "impedes [appellate] review"). And, based on our independent review of the parties' submissions to the court, we are unable to determine which of the competing methodologies claimed by the parties is required by the PSSA and the 2004 amendment, nor can we determine whether the proffered calculations under the methodologies are otherwise correct. See Allstate Ins. Co. v. Fisher, 408 N.J. Super. 289, 302 (App. Div. 2009) ("Appellate review . . . 'does not consist of weighing evidence anew and making independent findings; rather, our function is to determine whether there is adequate evidence to support the judgment rendered' by the trial court." (quoting Cannuscio v. Claridge Hotel & Casino, 319 N.J. Super. 342, 347 (App. Div. 1999))).

We therefore vacate the court's award of the consumer price index adjustment, remand for the court to consider the issue anew based on competent evidence and the parties' arguments, and render a decision tethered to the findings of fact and conclusions of law required by Rule 1:7-4. We express no

opinion on the merits of the issue, and nothing in this opinion shall be construed to the contrary.

In support of her cross-appeal, defendant argues the court erred by denying her cross-motion for an award of counsel fees and costs incurred in defending plaintiff's motion to reduce, modify, or suspend his alimony obligation. We consider the argument under the well-established principle that, in reviewing an order granting or denying an application for counsel fees, "[w]e will disturb a trial court's determination . . . only on the 'rarest occasion,' and then only because of a clear abuse of discretion." Strahan v. Strahan, 402 N.J. Super. 298, 317 (App. Div. 2008) (quoting Rendine v. Pantzer, 141 N.J. 292, 317 (1995)).

Defendant contends the court abused its discretion because plaintiff's motion was made in bad faith. Defendant asserts plaintiff's motion was made in bad faith because he violated N.J.S.A. 2A:34-23(k) by filing his application less than ninety days after the March 2020 investment market decrease that he claimed caused the reduction in his monthly dividend income month to almost zero, he failed to meet his burden of showing a material change in circumstances, and he had otherwise failed to comply with other requirements of the April 26, 2019 order, including the requirement that he pay $1,279,320 in alimony arrears.

26

We are not persuaded by defendant's arguments. As we have explained, the court found plaintiff's motion for suspension, termination, or modification of his alimony obligation included sufficient representations to warrant the court's close examination and comparison of the circumstances extant when the alimony obligation was ordered with those present in 2020 to determine if there was a material change in circumstances warranting further consideration of the modification motion. We therefore discern no basis in the present record to question the court's finding plaintiff's motion was not made in bad faith.

In addition, defendant's reliance on N.J.S.A. 2A:34-23(k) is misplaced. The statute provides that "[u]nder circumstances where the changed circumstances arise from the loss of employment," no application for a modification of alimony "shall be filed until a party has been unemployed, or has not been able to return to or attain employment at prior income levels, or both, for a period of [ninety] days." N.J.S.A. 2A:34-23(k). By its plain terms, the ninety-day limitation applies solely where a modification of alimony is sought based on movant's loss of employment.

Here, plaintiff's employment remained the same as it was when the April 26, 2019 order was entered, and his modification motion was not based on a

27

claimed loss of employment. The ninety-day limitation set forth in N.J.S.A. 2A:34-23(k) is therefore inapplicable.

We also reject defendant's claim she is entitled to fees because plaintiff failed to honor other obligations imposed by the April 26, 2019 order. Defendant does not cite to any legal authority supporting her conclusory assertion a supporting spouse is not entitled to relief from an alimony order simply because he or she has otherwise did not comply with other provisions of a matrimonial order. Moreover, defendant ignores the court rejected her cross-motion for relief in aid of litigant's rights based on her claim plaintiff violated provisions of the April 26, 2019 order, and defendant does not appeal from that ruling by the court. In sum, we are not persuaded the court clearly abused its discretion by denying defendant's cross-motion for counsel fees.

We therefore vacate those portion of the court's July 18, 2020 Family Part order denying plaintiff's motion to terminate, modify, or suspend his $7,500 monthly alimony obligation, and directing that he pay defendant a $167,536 retroactive cost-of-living adjustment for his alimony and child support obligation, and we remand for further proceedings on those portions of the order

in accordance with this opinion.  We affirm the portion of the July 18, 2020 order denying defendant's motion for counsel fees.[7]

Affirmed in part, vacated in part, and remanded for further proceedings. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

---

[7] We also affirm those portions of the July 18, 2020 order from which no appeal was taken.